A89A2087. ANNIS v. TOMBERLIN & SHELNUTT ASSOCIATES, INC. et al.
(392 SE2d 717)

BEASLEY, Judge.

Following an adverse jury verdict and judgment, Annis appeals the denial of his amended motion for judgment notwithstanding the verdict or for new trial in this suit involving stock purchase and employment agreements surrounding the sale of Annis, Inc., a family-owned termite and pest control business.

The evidence is viewed so as to uphold the verdict. *Wright v. Thompson*, 236 Ga. 655, 659 (V) (225 SE2d 226) (1976). Annis began working part-time at Annis, Inc. in 1968, doing pest and termite control, selling, and managing employees and worked his way into "front-line management" of the business. Annis' mother was in charge.

On September 27, 1985, there was 293 shares of outstanding common stock of the company. Annis' mother owned 97.75 shares or 33 percent. Annis owned 44.5833 shares or 15.2 percent. Other relatives owned the remainder of the common shares. On that date, the Annis family members entered into a stock purchase agreement with Tomberlin & Shelnutt Associates, Inc., by which all of the family members, except Annis, sold all of their outstanding shares. In this agreement, Annis sold 15.2833 and retained 29.3 shares. The agreement provided, inter alia, that Tomberlin & Shelnutt would enter into an employment agreement with Annis and that Annis would enter into a stock purchase agreement with Annis, Inc., which they did. It also granted Annis an option to purchase 36.3 shares of the company's common stock at any time between September 27, 1985, and September 30, 1987.

The initial stock purchase agreement contained the restrictive covenant: "The Sellers shall not directly or indirectly render services to or for any person or firm or engage in any activity competitive with

or adverse to Company's business, whether alone, as a partner or as an officer, director, employee or shareholder of any other corporation or as a trustee or other representative of any activity, within a fifty (50) mile radius from the Company's principal place of business in Augusta, Georgia for a period of three (3) years from the date of this Agreement." The second individual stock purchase agreement as well as the employment contract with Annis contained the same restrictive provision, triggered in the former upon the company's purchase of Annis' stock pursuant to the agreement and in the latter by Annis' separation from employment with the company or non-renewal of the employment agreement.

The sale of Annis, Inc., to Tomberlin & Shelnutt was brought about in part by Annis' actions and efforts. During Mr. Tomberlin's tenure as regional sales director in Atlanta for another pest control company, Annis contacted the regional office for a job and interviewed with Tomberlin. During the interview, Annis explained that the family business was for sale and Tomberlin worked through Annis for a period of months to purchase the business. Annis was totally involved in the negotiations for the sale. Tomberlin & Shelnutt was formed solely to purchase Annis, Inc.

In the four years prior to the sale to Tomberlin & Shelnutt, Annis' yearly salary from Annis, Inc., did not exceed $16,700. The first year after the sale, Annis received an annual salary of $30,000.

On September 1, 1987, Annis resigned employment with Annis, Inc., effective September 15, 1987. Prior to leaving Annis, Inc., Annis wrote a letter to a customer of competitor Wilcox Sales & Service, Inc., d/b/a Allstate Termite & Pest Control Company, regarding termite treatment and received a paycheck from that company. At trial, Annis admitted that by writing the letter, he had aided a competitor of Annis, Inc. Prior to leaving employment with Annis, Inc., Annis had prepared specifications for termite control work in schools for the county board of education. Shortly after leaving Annis, Inc., Annis assisted Wilcox, for whom he was then employed, in successfully submitting a bid for the county school termite control. Annis sought a bonus from his new employer for his assistance in securing the bid. When Annis left Annis, Inc., he took with him certain of the company's property, including a manual of its marketing strategy.

Approximately one month after ending his employment with Annis, Inc., Annis filed a complaint for damages and declaratory judgment against Tomberlin & Shelnutt, Tomberlin and Shelnutt individually, and Annis, Inc., seeking the purchase price for the balance of his stock in Annis, Inc., under the stock purchase agreement wherein he had agreed to sell the stock upon termination of his employment. The suit also sought a declaration that the restrictive covenant contained in the employment agreement was void. Subsequently, the par-

ties entered into an agreement settling the suit whereby defendants agreed to pay Annis a fixed sum for the balance of his Annis, Inc., stock, to be paid in installments, and whereby the restrictive covenant was shortened to a term of eighteen months, until March 1, 1989, or upon the sale of Annis, Inc., or a majority of its assets, whichever occurred first.

Installment payments for Annis' stock were made pursuant to the settlement agreement. The payment due on December 20, 1987, was made on December 21 and accepted by Annis. The next payment was due on March 1, 1988. At that time, Tomberlin was out of town; the check was written on March 7, and put in Annis' home mailbox. On March 8, Annis went to Tomberlin's office and inquired about the payment. Tomberlin explained that the check had been delivered but offered to write a replacement. Annis agreed to wait and check his mailbox. On March 9, Annis wrote Tomberlin informing him that he was accelerating payment of the unpaid balance under the settlement agreement but that he would consider making a bargain if Tomberlin would fully release him from all covenants, specifically the one regarding noncompetition.

On March 17, Tomberlin & Shelnutt, Annis, Inc., and Tomberlin individually, filed suit in superior court against Annis alleging his violation of the restrictive covenants in the initial stock purchase agreement with the Annis family and in the employment agreement with Annis. They sought temporary and permanent injunction enjoining Annis from continuing to breach the covenants, $25,000 lost profits, damages for conversion of property valued at $25,000, punitive damages of $75,000, a declaration that they were not indebted to Annis in any amount pursuant to a promissory note or the agreement settling the prior lawsuit, and an award of reasonable attorney fees and expenses of litigation.

Just prior to the filing of that suit, Annis had filed an action against Tomberlin & Shelnutt and others in the state court seeking payment of $41,059 pursuant to the settlement agreement plus interest and attorney fees. By consent, the actions were consolidated in the superior court and the parties were realigned to reflect Tomberlin & Shelnutt and the others as defendants, with their claims as a counterclaim and Annis as plaintiff. Annis was also shown as third-party plaintiff inasmuch as Wilcox Sales & Service, Inc. d/b/a Allstate Termite & Pest Control Company was added as a third-party defendant. Defendants responded to the consolidated suit asserting a failure of consideration for the debt allegedly owed by them to Annis; that Annis reaffirmed and ratified the covenants not to compete in the settlement agreement, waiving an issue of validity, and Annis was estopped to contest the covenants; that Annis had breached the covenants, relieving them of any indebtedness to Annis; and that because of Annis'

breach, they were entitled to a set-off of any amounts owed to Annis.

The verdict on the counterclaim was for $7,500 actual damages, $10,000 punitive damages, and $5,000 attorney fees.

1. In his first and second enumerations of error, Annis contends the trial court erred in denying him a directed verdict against defendants for the requested $41,059 plus interest and in refusing to grant him j.n.o.v. or a new trial on the general grounds because it was undisputed that defendants obtained the balance of his stock in Annis, Inc., but did not pay the balance of the purchase price.

The evidence, however, supported findings that the purchase price paid by Tomberlin & Shelnutt for Annis, Inc., included the value of the covenants not to compete, that Annis breached such covenants, and that specific damage flowed from the breach. This authorized the jury to find in favor of defendant's claim of failure of consideration and/or that defendants were entitled to a set-off of the balance owed. See statement of facts recited above.

2. In his third and fourth enumerations of error, Annis contends he was due a directed verdict or j.n.o.v. on defendants' counterclaim and that the court erred in overruling his motion for new trial because the covenant not to compete was overbroad and void as a matter of law as a covenant not to compete ancillary to an employment contract. He cites *White v. Fletcher/Mayo/Assoc.*, 251 Ga. 203 (303 SE2d 746) (1983).

The permissible scope of restrictive covenants depends upon the context in which they are drafted; they are considered in light of the specific factual situation and the nature of the terms of the covenant. *Farmer v. Airco, Inc.*, 231 Ga. 847, 850 (204 SE2d 580) (1974); *Hood v. Legg*, 160 Ga. 620, 632-633 (128 SE 891) (1925). *Farmer* provides that a covenant entered into as part of a sale of a business can generally be drafted more broadly than one which is entered into as part of an employment contract. The reason for the distinction is that the parties to a sale of a business are in a more equal bargaining position than those in an employment situation. However, even in the employment situation, covenants are analyzed in context and can be upheld and enforced if they are reasonably drafted. *Edwards v. Howe Richardson Scale Co.*, 237 Ga. 818, 820 (229 SE2d 651) (1976). Determination of whether or not the covenant is reasonable involves an examination of the time limits, territorial limits, and the restricted scope of activity. *Watson v. Waffle House*, 253 Ga. 671, 673 (2) (324 SE2d 175) (1985).

It is unnecessary to categorize the covenant at issue as one ancillary to the sale of the business or to the employment contract because even under the narrower employment contract scope, the covenant is not overbroad. *Watson*, supra, involved a restrictive covenant ancillary to a lease/franchise agreement which prevented the lessors from

competing with Waffle House by engaging in the restaurant or fast food business within a five-mile radius for a period of two years following termination of the lease. The Supreme Court rejected the argument that the covenant amounted to a prohibition against working "in any capacity." In light of the role the Watsons played in the business, the covenant's restriction against working at all in the same field in the restricted area was Waffle House's only way of protecting its interests. The Watsons were involved in all areas of the business and the Waffle House had a stake in protecting its investment. The covenant ancillary to an employment contract was upheld. Id. at 673. See also *Barry v. Stanco Communications*, 243 Ga. 68, 71 (5) (252 SE2d 491) (1979); *Coffee System of Atlanta v. Fox*, 226 Ga. 593, 597 (4) (176 SE2d 71) (1970); *Shirk v. Loftis Bros. & Co.*, 148 Ga. 500, 504 (1) (97 SE 66) (1918).

As in *Waffle House*, Annis was a front-line manager. He was the second largest stockholder and the only one who retained an interest in the corporation after the sale. He had worked in the family business for over fifteen years in every capacity. Tomberlin and Shelnutt had invested a substantial amount in their purchase of the business. In addition, they agreed to pay Annis a salary of almost double his pre-sale salary. While at Annis, Inc., Annis' "participation involved every facet of the business and [he] gained knowledge which [Annis, Inc.] has a reasonable stake in protecting." *Watson*, supra at 673 (2).

Given the nature of the pest control business, a covenant prohibiting Annis from engaging in competitive activities in a fifty-mile radius for three years "means simply that [Annis] shall not compete within the time and within that area. This restraint cannot be said to be unreasonable." Id. Accordingly, the restrictive covenant in this case is not overbroad.

Even if the covenant were overbroad, it would be possible to blue pencil the agreement so as to make it enforceable. Appellant's reliance on *White* is misplaced. The Supreme Court has recently determined that "if a contract for the sale of a business and an employment contract are part of the same transaction they may be construed together to supply missing elements and blue penciled to make overbroad terms valid." *Lyle v. Memar*, 259 Ga. 209, 210 (378 SE2d 465) (1989). In this case, all three restrictive covenants were part of the same transaction and thus would be construed together to prohibit Annis from engaging in activities competitive with Annis, Inc.'s pest control business.

3. In the fifth enumeration of error, Annis contends the court erred in overruling his motion for new trial because there was no evidence to support the verdict for the breach of contract claims as there was no evidence that he violated the covenant not to compete and only mere speculation of damage to defendants' business by any vio-

lation of the covenant.

There was evidence that while Annis worked for Annis, Inc., he prepared specifications for termite control for the county schools. Tomberlin testified that as a commercial salesman for Annis, Inc., it would have been Annis' responsibility to submit the county school system termite control bid on behalf of Annis, Inc., and that Tomberlin thought Annis had placed the bid on behalf of Annis, Inc., and the bid had not won because it was too high. There was also evidence that Annis went directly to work for competitor Wilcox, accompanying him to some schools and assisting him in preparing the winning bid. There was only one other bidder and Annis admitted that if the same bid which won for Wilcox had been submitted on behalf of Annis, Inc., his former employer would have prevailed. It was defendants' position that the bid submitted on behalf of Wilcox was actually Annis, Inc.'s bid. There was further evidence that Annis oversaw his new employer's performance of the termite control in the schools and expected a bonus from Wilcox for his role in getting the bid.

There was ample evidence from which the jury could conclude that Annis violated the restrictive covenants. As to the issue of damages, Tomberlin testified without objection that at least $25,000 out of the $60,000 bid would have been profit.

"A party who has been injured by a breach of contract can recover profits that would have resulted from performance, when their amount and the fact that they have been prevented by the breach of the [party] can be proved with reasonable certainty. [Cits.]" *Carter v. Greenville Svc. Co.*, 111 Ga. App. 651, 652 (1) (143 SE2d 1) (1965). "[T]he ability to 'estimate damages to a reasonable certainty' is all that is required, [cit.], and mere difficulty in fixing the exact amount will not be an obstacle to the award. [Cits.]" (Emphasis omitted.) *Pottinger v. Cross*, 170 Ga. App. 647, 648 (1) (317 SE2d 850) (1984).

Tomberlin was able to estimate the loss with reasonable certainty and the jury's award of $7,500 was authorized by the evidence.

4. Next is whether there was any evidence to support the $7,500 verdict on defendants' tort claims, specifically any evidence of the value of the personal property allegedly converted.

The evidence was undisputed that at the time Annis left his employment with Annis, Inc., he took company property with him including a marketing strategy manual. There was testimony that the manual represented approximately eight years and several hundred hours of work by Tomberlin, that the marketing strategy it reflected increased the sales of Annis, Inc., by $300,000, and that there was nothing more valuable to the operation of Annis, Inc., than the strategy manual. This evidence allowed the jury to find that the converted information had a value of $7,500 or more. " 'We decline to substitute our judgment based upon a cold record for that of enlightened jurors

who heard the evidence and saw the witnesses.' [Cits.]" *Cox v. Cantrell*, 181 Ga. App. 722, 725 (7) (353 SE2d 582) (1987).

5. Was there any evidence of value of the alleged converted property and of wilful misconduct, fraud, or conscious indifference to the consequences of Annis' actions, to support the award of punitive damages?

Contrary to Annis' contention, there was evidence of conversion of personal property and of its value. There was evidence that this conversion was part and parcel of Annis' unauthorized competition with his former employer.

"Additional or exemplary damages may be recovered under OCGA § 51-12-5 '(i)n a tort action in which there are aggravating circumstances, in either the act or the intention.' 'To authorize the imposition of punitive damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. The latter expression relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights.' [Cit.] While an award of punitive damages is authorized only where a tortfeasor's conduct is of an aggravated nature, such an award may properly be based upon an aggravated tort involving only property rights. [Cits.]

"Neither direct personal contact nor specific malice between defendant and plaintiff is required to support a claim for additional damages under OCGA § 51-12-5. The malice required for the recovery of exemplary damages need not amount to ill-will, hatred, or vindictiveness of purpose. It is sufficient if the [offender's] acts were wanton or were done with a reckless disregard for or a conscious indifference to the rights of the [party] to use . . . his property. [Cit.] 'Where, as here, there is some evidence to indicate that [Annis] proceeded in wilful disregard of the rights of [Tomberlin & Shelnutt and Annis, Inc.] . . . this constitutes wilful and tortious misconduct (which could authorize a jury to award) punitive damages. (Cit.)' [Cit.]" *Bowen v. Waters*, 170 Ga. App. 65, 67 (2) (316 SE2d 497) (1984).

6. The eighth enumeration contends the trial court erred in overruling Annis' motion to strike Tomberlin's testimony to the effect that Tomberlin could pay the purchase price for appellant's stock over a period of time, because such testimony varied, contradicted, and conflicted with the terms of the original stock purchase contract and made Annis "seem overreaching in demanding his money in a lump sum."

Annis made no objection to the testimony when given and raised the propriety of testimony regarding installment payment only after completion of direct examination and the substantial cross-examination of Tomberlin. During this cross-examination, appellant's own

counsel elicited more of the now objected-to testimony.

Unless evidence is admissible when offered and later appears to be inadmissible, which is not the claim or situation here, "[a]n objection to evidence must be raised as soon as the ground for objection becomes apparent and generally this means that the objection must be made at the time the evidence is offered. [Cits.]" *Brown v. Techdata Corp.*, 238 Ga. 622, 628 (234 SE2d 787) (1977). Moreover, "[i]t is well settled that when a party has himself induced what he subsequently assigns as error, he will not be heard to complain of it on appeal. [Cit.]" *Price v. Hitchcock*, 174 Ga. App. 606, 607 (2) (330 SE2d 807) (1985).

7. Next, Annis contends the trial court erred in failing to charge his 5th request, "that the covenant not to compete set out in this informal agreement is void and unenforceable as a matter of law and should not be considered by you," because the undisputed facts showed that under *White*, supra, the covenant not to compete was void as a matter of law.

The covenant was not void as a matter of law. See Division 2. " ' "A request to charge itself must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper." [Cits.]' [Cits.]" *Fowler v. Gorrell*, 148 Ga. App. 573, 576 (2) (a) (251 SE2d 819) (1978).

8. Enumerations ten and eleven find error in charging defendants' requests six and seven dealing with the measure of damages, including nominal damages, for breach of the covenant not to compete. Although conceding that both statements are legally accurate, Annis argues they were improper because the covenant was void as a matter of law.

The covenant was not void. See Divisions 2 and 7. The court did not err on the basis urged.

9. Twelfthly, Annis contends that Tomberlin's claim of lost profits was purely speculative, so the giving of defendants' eighth request, which instructed that lost profits were recoverable when definitely ascertainable and directly traceable, was error.

Defendants' claim of lost profits was supported by the evidence. See Division 3. The instruction does not succumb to the challenge asserted by Annis.

10. Defendants' requests to charge numbers twelve through sixteen dealt with punitive damages. Annis' attack (enumerations of error 13-17), that there was no evidence to authorize such an award, is without merit. See Division 5.

11. Defendants' requests to charge numbers seventeen, eighteen, and nineteen, addressing failure of consideration, survive Annis' claim (enumerations of error 18-20) that there was no failure of considera-

tion for the purchase price balance for his stock. See Division 1.

12. Defendants' request to charge number twenty-one instructed that in mutual departure from a contract, before either party can recover for failure to pursue the letter of the agreement, the other party must be given reasonable notice of the intention to rely on the exact terms of the contract. The twenty-first enumeration of error maintains there was no factual basis to so instruct.

The evidence shows a mutual departure from the payment schedule under the parties' settlement agreement and no notification by Annis that he was going to rely on the exact terms of the agreement. See statement of facts above.

13. The twenty-second and last enumeration of error points to error in the giving of defendants' request to charge number twenty. It concerned recovery of the expenses of litigation. Annis argues there was a bona fide controversy and no evidence of bad faith, stubborn litigiousness, or causing defendants unnecessary trouble and expense.

"Under OCGA § 13-6-11 'expenses of litigation are generally not allowed as a part of damages, but if the defendant [or defendant in counterclaim] has acted in bad faith, has been stubbornly litigious or has caused the [plaintiff or plaintiff in counterclaim] unnecessary trouble and expenses the jury may allow them . . . . For the [plaintiff or plaintiff in counterclaim] to recover [he] need only show any one of the three conditions to exist.' [Cit.] A judgment awarding such attorney fees should be affirmed if there is any evidence to support it, unless it can be said as a matter of law that there was a reasonable defense. [Cit.]" *Backus Cadillac-Pontiac v. Brown*, 185 Ga. App. 746, 747 (1) (365 SE2d 540) (1988).

There was evidence of Annis' bad faith in failing to carry out the provisions of his contracts with defendants so as to support an award under the statute. See *Glen Restaurant v. West*, 173 Ga. App. 204, 205 (325 SE2d 781) (1984), citing *Edwards-Warren Tire Co. v. Coble*, 102 Ga. App. 106 (115 SE2d 852) (1960). Moreover, it cannot be said as a matter of law that Annis had a reasonable defense to defendants' separate and independent claims against him. Under these circumstances, the charge was proper.

*Judgment affirmed. Carley, C. J., and McMurray, P. J., concur.*

Decided March 5, 1990 —
Rehearing denied March 20, 1990 — 

*Jay M. Sawilowsky*, for appellant.
*Broyles, Dunstan & Dunstan, J. Richard Dunstan*, for appellees.