In re Cynthia R. CLAYTON and David H. Wolff, Debtors.

NORRELL HEALTH CARE, INC., Plaintiff,

v.

Cynthia R. CLAYTON and David H. Wolff, Defendants.

Bankruptcy No. 91–57681–ASWSE.
Adv. No. 92–5164.

United States Bankruptcy Court, N.D. California.

June 26, 1994.

Robert M. White (argued), of White & McMahon, Santa Rosa, CA, for Norrell Health Care, Inc.

Saul M. Weingarten (argued), of Saul Weingarten & Associates, Seaside, CA, for Cynthia R. Clayton and David H. Wolff.

## DECISION

ARTHUR S. WEISSBRODT, Bankruptcy Judge.

In this matter, the Plaintiff and Movant herein, Norrell Health Care, Inc. ("Norrell"), seeks to have $150,000 in punitive damages awarded by an arbitrator declared nondischargeable under 11 U.S.C. § 523(a)(6). Norrell is represented by Robert White, Esq. of the firm of White & McMahon. The Defendants, Cynthia Clayton ("Clayton") and David Wolff ("Wolff"), opposing the motion, are represented by Saul Weingarten, Esq. of Saul Weingarten & Associates. To support its motion, Norrell submitted the declaration of William Holley II, as well as an appendix consisting mainly of the transcript of the prior arbitration hearing between the parties and the resulting decision. Clayton and Wolff submitted a declaration by Cynthia Clayton.

The primary questions before the Court include (1) whether an arbitration award, not supported by any specific findings of fact, can be used via collateral estoppel to provide such findings without further submissions of evidence in the context of an 11 U.S.C. § 523 nondischargeability action, and (2) whether the prior proceedings between the parties were sufficient to merit the use of collateral estoppel in the present action.

### I. BACKGROUND FACTS

Norrell, a Georgia corporation, operates many agencies throughout the United States to provide temporary health care services. In July 1986, Clayton and Wolff agreed to serve as Norrell's agent for the Monterey, California area. However, over the next several years the business relationship deteriorated into charges and counter-charges of fraud, theft and deception.

Norrell invoked the mandatory arbitration clause from the agreement under which Clayton and Wolff had become associated with Norrell. During September and December of 1990, as well as September 1991, the parties contested their dispute before an

arbitrator, George Carnall ("Carnall") of the American Arbitration Association. Carnall's decision was later approved by the United States District Court for the Northern District of Georgia, the Hon. Robert H. Hall presiding.

The following allegations are drawn from Norrell's complaint pled to the arbitrator. In the spring of 1990, Clayton and Wolff transferred Norrell customers, employees and assets into a competing entity, while falsely representing to Norrell that they would ensure their return before terminating their agency relationship. Clayton and Wolff diverted and converted funds from clients and established Norrell accounts that were supposed to be Norrell's sole property. Clayton and Wolff consistently deceived Norrell about these actions.

Norrell was represented at the arbitration proceedings by William Holley, Esq. Clayton and Wolff were originally represented by Kenneth Kroopf, Esq. ("Kroopf"), who appeared at the preliminary hearings in the matter. However, Kroopf did not represent Clayton and Wolff at the two-day final arbitration hearing, held September 23–24, 1991, at which all of the live testimony was presented. The only reference in the transcript of the arbitration hearing as to why Kroopf did not appear was a statement by Clayton that she and Kroopf had had a profound disagreement as to how to proceed with the dispute with Norrell. The Court notes that on December 5, Judge Hall granted Kroopf's motion to withdraw as counsel for Clayton and Wolff after Kroopf had declared both that he "had a continuing conflict on how best to represent the interests of defendants" with Clayton and Wolff, and also that Clayton and Wolff were well-behind in paying his fees.

After hearing the allegations, as well as the supporting evidence and testimony of all the parties involved, Carnall issued a final award on October 17, 1991, granting Norrell compensatory damages of $145,635.15, punitive damages of $150,000, and attorney's fees of $150,000. Carnall did not issue any specific findings of fact or conclusions of law. The award was confirmed as a federal court judgment on December 5, 1991, in a hearing not attended by either Clayton or Wolff in person or through a legal representative. Clayton has declared to this Court that she and Wolff did not appear because, acting as they were at that stage without legal counsel, they were not aware that they had any right or obligation to object to the confirmation of the award.

Clayton and Wolff filed Chapter 7 petitions in bankruptcy on December 16, 1991.

## II. *LAW OF THE MOTION*

Under Fed.R.Civ.P. 56, incorporated into adversary proceedings through Fed R.Bankr.P. 7056, it must be demonstrated that no material issues of fact remain to be decided, as well as that the moving party is entitled to judgment as a matter of law. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 321–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Material issues under 11 U.S.C. § 523 are judged by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(*"Grogan"*). All inferences must be drawn in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*"Diebold"*).

Through this motion, Norrell seeks to have solely the punitive damages element of its arbitration award declared nondischargeable under 11 U.S.C. § 523(a)(6). Norrell acknowledges that due to the lack of specific findings of fact in the arbitration award, it cannot be used to obtain summary judgment on the claims for the actual damages and attorneys fees, as those damages may have been awarded in response to causes of action in Norrell's arbitration complaint that did not allege facts sufficient to sustain a violation of 11 U.S.C. § 523.

In the Ninth Circuit, the definition of "willful and malicious conduct" in terms of 11 U.S.C. § 523(a)(6) is set forth in the cases of *Impulsora Del Territorio Sur, S.A. v.*

*Cecchini (In re Cecchini)*, 780 F.2d 1440 (9th Cir.1986)("*Cecchini*") and *Transamerica Commercial Finance Corporation v. Littleton (In re Littleton)*, 942 F.2d 551 (9th Cir.1991)("*Littleton*"). For "willful", "[w]hen a wrongful act ... done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure." *Cecchini*, 780 F.2d at 1443. "Necessarily produces harm" means that the "act must be targeted at the creditor, at least in the sense that the act is certain or almost certain to cause financial harm." *Littleton*, 942 F.2d at 555. Punitive damages may be declared nondischargeable under 11 U.S.C. § 523(a)(6), even when the compensatory damages in the original action were claimed as a result of fraud under 11 U.S.C. § 523(a)(2). *Palmer v. Levy (In re Levy)*, 951 F.2d 196 (9th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992); *Moraes v. Adams et al. (In re Adams)*, 761 F.2d 1422 (9th Cir.1985).

### III. *COLLATERAL ESTOPPEL AND ARBITRATION*

■ To prove the elements of 11 U.S.C. § 523(a)(6) without re-litigating the case, Norrell proffers the arbitration proceeding to collaterally estop Clayton and Wolff from raising material issues of fact. Collateral estoppel will preclude relitigation of issues that have already been litigated in a prior judgment and were necessary to that judgment. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) ("*Parklane Hosiery*"); *Mendoza v. United States*, 672 F.2d 1320, 1325 (9th Cir.), *reversed on other grounds,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984). It is generally available in discharge proceedings. *Grogan*, 498 U.S. at 285 n. 11, 111 S.Ct. at 658 n. 11.

■ "Whether collateral estoppel is available is a mixed question of law and fact in which the legal issues predominate. The question of its availability is subject to our *de novo* review." *Davis & Cox v. Summa*

*Corp.,* 751 F.2d 1507, 1519 (9th Cir.1985). However, even if the doctrine is legally available to the moving party, the actual application of collateral estoppel is subject to the discretion of the court. *Parklane Hosiery,* 439 U.S. at 331, 99 S.Ct. at 651–52; *Dixie National Life Insurance Company, etc. v. McWhorter et al. (In the Matter `of McWhorter)*, 887 F.2d 1564, 1566 (11th Cir. 1989) ("*McWhorter*"). The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied. *Merrill v. Walter E. Heller & Company of Alabama (In the Matter of Merrill)*, 594 F.2d 1064, 1067 (5th Cir.1979).

It is undisputed that a state court judgment, let alone one of another federal court, must be given the same preclusive effect in a federal action as it would have been· given under the law in which it was rendered. 28 U.S.C. § 1738; *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 80–82, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984) ("*Migra*"). Exceptions only exist where specifically mandated, such as the prohibition on the use of *res judicata* in nondischargeability hearings. *See Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

■ However, it has been disputed whether arbitration awards should similarly be given full faith and credit in terms of bankruptcy discharge hearings. *Compare Sixteen Twenty Eight Bellevue Limited Partnership et al. v. Barigian (In re Barigian)*, 72 B.R. 407 (Bankr.C.D.Cal.1987) ("*Barigian*") *with Swanson et al. v. Tam (In re Tam)*, 136 B.R. 281 (Bankr.D.Kan.1992).[1] The Honorable Barry Russell, United States Bankruptcy Judge in the Central District of California and a respected commentator on evidentiary issues, has opposed this usage, both on the ground that arbitrators. do not employ the Federal Rules of Evidence and thus cannot adjudicate the same issues in precisely the same manner as they would be argued in Federal Court, *Barigian,* 72 B.R. at 410, as well as his generally restrictive view of the use of collateral estoppel to prevent new

---

1. *See generally* Motomura, "Arbitration and Collateral Estoppel: Using Preclusion to Shape Procedural Choices", 63 Tul.L.Rev. 29 (1988) (discussing preclusive effects of arbitration throughout the American legal system).

argument. *See* Russell, *Bankruptcy Evidence Manual,* §§ 4–7 at 33–55 (1993). In addition, it could be argued that an arbitration is basically a contractual dispute resolution arrangement between the parties, not worthy of the same weight as a mandated decision of an official state or federal court. *See, e.g., AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985); *John Wiley & Sons v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964); Shell, "Res Judicata and Collateral Estoppel Effects of Commercial Arbitration", 35 UCLA L.Rev. 623, 660–73 (1988). The Court notes that there is no evidence that the parties intended (or did not intend) the arbitration to resolve questions in a subsequent bankruptcy court hearing. However, the same could often be said about a variety of administrative and judicial proceedings.

■ The Court finds that collateral estoppel can, as a matter of law, be used to preclude relitigation of factual issues previously decided in an arbitration. This is done on two grounds. First, federal courts must frame preclusion rules in light of the interest to be protected. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223–25, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985). The Court takes note of both the strong national policy interest in favor of alternative dispute resolution, *see Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); *Moses H. Cone Hospital v. Mercury Construction,* 460 U.S. 1, 23–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983), and the Supreme Court's admonition in *Grogan,* 498 U.S. at 285 n. 11, 111 S.Ct. at 658 n. 11, that collateral estoppel should be employed in nondischargeability hearings to prevent unnecessary relitigation of issues. With these interests in mind, the difference between an official arbitrator, acting under federal procedural and state substantive law, and a judge is not relevant in this context.

With respect to Judge Russell's objection as to the necessary procedural rules for the use of collateral estoppel, *i.e.,* application of the F.R.E., as far as this Court is aware, no other bankruptcy court has cited *Barigian* for precedent in this context. The Court notes that rigorous application of Judge Russell's proposed test would lead to the disqualification of many state court judgments from receiving full faith and credit in federal courts, a result arguably not compatible with *Migra* or the Full Faith and Credit Act. *But see, e.g., Maidman v. O'Brien,* 473 F.Supp. 25 (S.D.N.Y.1982) (findings from arbitration on federal securities law binding as collateral estoppel when procedures are formal and legalistic); *Restatement (Second) of Judgments* § 84 (Comment (c)) (1982).

■ Second, the arbitration award in the case before the Court was confirmed by a Federal District Court. Judgments of courts approving arbitration awards should be as final as any other judgments. *Norman Kern & Company v. McNabola (In re McNabola),* 43 B.R. 362, 364 (Bankr.N.D.Ill.1984). *Cf. Birge–Forbes Co. v. Heye,* 251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286 (1920). This Court will approach the arbitration award as if it had been rendered directly by the Federal District Court for the Northern District of Georgia.

## IV. *COLLATERAL ELEMENTS AND DEFAULT JUDGMENTS*

■ Four elements must be demonstrated to permit the use of another court's decision to collaterally estop Clayton and Wolff in this action: 1) the critical issues must actually have been litigated and determined by a final judgment, 2) the determination must have been essential to that judgment, 3) Clayton and Wolff must have been parties to that judgment, and 4) the issues to be precluded must be identical to those decided in the prior action. *McArthur v. Bugna (In re Bugna),* 137 B.R. 785, 789–90 (Bankr. C.D.Cal.1992) ("*Bugna*"); *Punton v. Chapman (In re Chapman),* 125 B.R. 284 (Bankr. S.D.Cal.1991). The elements are the same under Georgia law. *See* O.G.C.A. §§ 9–12–40, 9–12–42; *Wright v. McIntyre (In re Wright),* 57 B.R. 961, 964 (Bankr.N.D.Ga. 1986); *Usher v. Johnson,* 157 Ga.App. 420, 421–22, 278 S.E.2d 70, 72 (1981). The bur-

den of establishing these elements under Georgia law, as in federal practice, rests with Norrell. *Cravey v. Druggists Co–Operative Ice–Cream Co.*, 66 Ga.App. 909, 913–14, 19 S.E.2d 845, 847–48 (1942).

In the case at bar, only some of these questions are open to serious debate. Clayton and Wolff fully participated in the arbitration hearing that resulted in the $450,000 award, and were represented by counsel for all but the final two days of the proceedings, which admittedly were the two days on which live testimony was taken. However, the Court has reviewed the transcript of the proceeding, and there is no evidence that Clayton and Wolff's lack of counsel represented a gross violation of due process, any more than when any litigant has to appear *pro se.* (The Court specifically cautions that this analysis does not represent a conclusion of law applicable beyond the present motion). Carnall frequently ruled against Norrell (and in favor of Clayton and Wolff) on questions of admitting evidentiary exhibits, and routinely explained the significance of each legal procedure to Clayton. Even when Carnall sustained some of Norrell's objections on the ground of hearsay, he told Clayton how she could bring the material in through her own testimony or her cross-examination of Norrell's witnesses.

When the Federal District Court approved the damages award and findings, it became a final judgment. The sole disputed point for our purposes is whether the elements of "willful and malicious conduct" were found by the arbitrator, and this question is answered by determining whether finding these elements was essential to the prior judgment.

**2.** *But see Pope v. United States,* 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944); *Geddes et al. v. United Financial Group et al.,* 559 F.2d 557, 560 (9th Cir.1977)(per curiam); *Flaks v. Koegel,* 504 F.2d 702, 707 (2nd Cir.1974) (all holding that the only element *not* proven through a default is the amount of the damages).

**3.** The Ninth Circuit Court of Appeals has left open the question of whether bankruptcy courts are bound by holdings of the BAP. *See Bank of Maui v. Estate Analysis, Inc. (In re Estate Analysis, Inc.),* 904 F.2d 470, 472 (9th Cir.1990). The BAP, not surprisingly, has ruled that lower courts are bound. *Philadelphia Life Ins. Co. v.*

It should be noted that Clayton and Wolff do dispute the first element, that the issues were actually litigated and determined. Clayton and Wolff argue that as Wolff did not attend all of the arbitration hearings, and as they were bereft of counsel for the two days of hearings when live testimony was presented, the arbitration award should be treated as a default, not usable for purposes of collateral estoppel.

The traditional common-law view is that a default judgment does not litigate a factual issue to a final decision on the merits. *See United States v. Gottheiner (In re Gottheiner),* 703 F.2d 1136, 1140 (9th Cir.1983) ("*Gottheiner*"); *General Teamsters, Auto Truck Drivers and Helpers Local 162 v. Mitchell Brothers Truck Lines,* 682 F.2d 763, 768 (9th Cir.1982); *American Triticale, Inc. v. Nytco Services, Inc.,* 664 F.2d 1136, 1147 (9th Cir. 1981); 1B *Moore's Federal Practice* ¶ 0.442[2] at 798 (2nd ed.1994); *Restatement (Second) of Judgments* § 27, Comment (e) (1980); 47 Am.Jur.2d, Judgments § 1198 (1969); 77 A.L.R. 1410 (1961). An exception exists solely as to the amount of the judgment determined in the prior court. *Comer v. Comer (In re Comer),* 723 F.2d 737, 740 (9th Cir.1984); *Daghighfekr v. Mekhail (In re Daghighfekr),* 161 B.R. 685, 686–87 (Bankr.9th Cir.1993).[2]

However, in a recent decision of the Bankruptcy Appellate Panel ("BAP") of the Ninth Circuit, a state court default judgment was given preclusive effect, in a nondischargeability hearing, through collateral estoppel when the applicable state law (in that case, Florida's) would give it that same effect. *Gayden v. Nourbakhsh (In re Nourbakhsh),* 162 B.R. 841 (9th Cir. BAP 1994) ("*Nourbakhsh*").[3]

*Proudfoot (In re Proudfoot),* 144 B.R. 876, 878–79 (Bankr. 9th Cir.1992); *In re Windmill Farms, Inc.,* 70 B.R. 618, 621 (9th Cir. BAP), *reversed on other grounds sub nom., Vanderpark Properties, Inc. v. Buchbinder (In re Windmill Farms, Inc.),* 841 F.2d 1467 (9th Cir.1988). This position has been followed by bankruptcy courts in the cases of *Muskin, Inc. v. Industrial Steel Co., Inc. (In re Muskin, Inc.),* 151 B.R. 252, 254–55 (Bankr. N.D.Cal.1993); *In re General Associated Investors Limited Partnership,* 150 B.R. 756, 760–61 (Bankr.D.Ariz.1993); *Coyne v. Westinghouse Credit Corporation et al. (In re Globe Illumination Co.),* 149 B.R. 614, 620–21 (Bankr.C.D.Cal. 1993) and *In re Torrez,* 132 B.R. 924, 943 (Bankr.

As the BAP found the situation to be in Florida, Georgia law also arguably treats pleadings in a default judgment as findings of the court. *Butler v. Home Furnishing Co.*, 163 Ga.App. 825, 296 S.E.2d 121, 122 (1982).

In addition, even aside from the *Nourbakhsh* holding, the Ninth Circuit has ruled that when a party substantively participates in a legal proceeding but does not stay until the conclusion, a judgment against that party is not considered one by default. *Gottheiner*, 703 F.2d at 1140. Clayton and Wolff played a substantive role in the arbitration proceedings, and any defects arising from the non-participation of either themselves or their counsel should have been a matter for the District Court which actually transformed the arbitration award into a final judgment. Again, the Court emphasizes that it is not making any legal conclusions about the merits of any due process or other challenge to the validity of the arbitration award, but rather is only facially accepting the judgment and according it full faith and credit.

## V. INFERENCES

 Resolving this case would be straightforward if the arbitrator had specifically laid out the factual and legal determinations that led him to make his decision. *See Bugna*, 137 B.R. at 790. Because he did not, Norrell asks the Court to infer these findings from the arbitration transcript. This has been done by other courts. *See, e.g., McKenna v. Jordan (In re Jordan)*, 151 B.R. 373 (Bankr.N.D.Miss.1992); *Fairway Golfview*

*Homes, Inc. v. Kecskes (In re Kecskes)*, 136 B.R. 578 (Bankr.S.D.Fla.1992); *Gunter v. Morton (In re Morton)*, 100 B.R. 607 (Bankr. N.D.Ga.1989). However, it should be noted that on a motion for summary judgment, all inferences should be drawn in favor of the non-moving party. *Diebold*, 369 U.S. at 655, 82 S.Ct. at 993. Accordingly, inferences to support the use of collateral estoppel on a summary judgment motion can only be drawn if they are the *only* reasonable inferences that could be drawn from the prior judgment. *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980); *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3rd Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).

## A. PUNITIVE DAMAGES AND GEORGIA LAW

Norrell asked the arbitrator to make an award of punitive damages for Clayton and Wolff's "malicious, reckless, willful and wanton acts." The substantive issues in the arbitration were governed by Georgia law. The relevant state statute on awarding punitive damages reads as follows: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences." O.C.G.A. § 51–12–5.1(b). This statute was the only basis for awarding punitive damages claimed in Norrell's complaint in the arbitration proceeding.

E.D.Cal.1991). *See also* Bussel, "Power, Authority, and Precedent in Interpreting the Bankruptcy Code", 41 UCLA L.Rev. 1063 (1994).

Two contrary positions have been taken by other bankruptcy courts within the Ninth Circuit. Cases from within the District of Oregon have consistently held that BAP cases are only binding if they arose from the same district as the case sub judice. *See Selden v. State of Oregon, Higher Education Assistance Foundation*, 121 B.R. 59, 62 (D.Or.1990); *In re Junes*, 76 B.R. 795, 797 (Bankr.D.Or.), *affirmed on other grounds*, 99 B.R. 978 (9th Cir. BAP 1989); *In re Crook*, 62 B.R. 937, 941 n. 2 (Bankr.D.Or.), *affirmed on other grounds sub nom., Credit Alliance Corp. v. Boies, Jr. (In re Crook)*, 79 B.R. 475 (9th Cir. BAP 1987); *In re Kao*, 52 B.R. 452, 453 (Bankr.D.Or.1985).

At least one court has held that BAP decisions are not binding on bankruptcy courts without

further direction from either the Ninth Circuit or its Judicial Council. *See In re Standard Brands Paint Co.*, 154 B.R. 563 (Bankr.C.D.Cal.1993). *See also Homestate Insurance Brokers of Alaska, Inc. v. Brosman (In re Brosman)*, 119 B.R. 212 (Bankr.D.Alaska 1990); Obregon, *In re Globe Illumination Co.: A Provocative But Flawed Theory on the Precedential Value of BAP Authority*, 21 Cal.Bankr.J. 45 (1993); March and Obregon, *Are BAP Decisions Binding on Any Court?*, 18 Cal. Bankr.J. 189 (1990). Giving BAP decisions precedential effect may also raise constitutional problems. *See Briney v. Burley (In re Burley)*, 738 F.2d 981, 991 n. 4 (9th Cir.1984) (Norris, J. dissenting) (citing to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 86 n. 39, 102 S.Ct. 2858, 2879 n. 39, 73 L.Ed.2d 598 (1982)).

The standard of proof under the Georgia punitive damages statute, clear and convincing evidence, is higher than that required for nondischargeability in bankruptcy, and thus is acceptable for use via-a-vis collateral estoppel. *See Associated Growers, Inc. v. Horowitz (In re Horowitz)*, 103 B.R. 786 (Bankr.N.D.Miss.1989).

Most of the individual terms in O.C.G.A. § 51–12–5.1(b), such as "fraud", "wantonness", or "oppression", fit within the meaning of "willful and malicious" for purposes of 11 U.S.C. § 523(a)(6). However, a possible exception may be drawn from the last element of the statute, "that entire want of care which would raise the presumption of conscious indifference to the consequences." In *Cecchini*, the Ninth Circuit specifically noted that wrongful acts (such as conversion or tortious battery) which violate 11 U.S.C. § 523(a)(6) must be deliberate, even if the resulting damages are not intended, *Littleton*, 942 F.2d at 554, and not just taken in "reckless disregard" of the rights of others. *Cecchini*, 780 F.2d at 1443 (noting that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904) has been superseded by the Bankruptcy Code).

At a hearing on this motion, the Court raised the question with the parties of whether the "entire want of care" language (from the Georgia statute) allowed for the award of punitive damages against defendants who acted only in "reckless disregard" of the rights of others, and did not deliberately violate those rights. In its responsive pleading, Norrell cited to the case of *Annis v. Tomberlin & Shelnutt Assoc.*, 195 Ga.App. 27, 392 S.E.2d 717 (1990) ("*Annis*"), a decision of a Georgia intermediate appellate court, for support of its argument that the "entire want of care" term meant "an intentional disregard of the rights of another, knowingly or willingly disregarding such rights." *Annis*, 392 S.E.2d at 723. The language of *Annis* does support the position of Norrell that awards of punitive damages under O.C.G.A. § 51–12–5.1(b) could only be made in response to wrongful acts that would also violate 11 U.S.C. § 523(a)(6). However, while actually citing *Annis*, a later Georgia court defined the statute to include acts that

were "wanton or were done for a *reckless disregard* for or a conscious indifference to the rights of ..." (emphasis added by Court). *Bruno et al. v. Evans et al.*, 200 Ga.App. 437, 441, 408 S.E.2d 458, 462 (1991)(citing *Bowen v. Waters*, 170 Ga.App. 65, 67, 316 S.E.2d 497, 500 (1984) ("*Bowen*")). To further confound the situation, the *Bowen* court relied on the holding of the Georgia Supreme Court in *Gilman Paper Co. v. James*, 235 Ga. 348, 219 S.E.2d 447 (1975) ("*Gilman*"), which defined the "entire want of care" standard to mean an "intentional disregard of the rights of another, knowingly or willingly disregarding such rights." *Gilman*, 235 Ga. at 351, 219 S.E.2d 447. And finally, the *Gilman* case, and the earlier Georgia Supreme Court decisions cited within, such as *Investment Securities Corp. v. Cole*, 186 Ga. 809, 199 S.E. 126 (1938), are cases involving trespass to land, where the only choices considered by the courts involved were either deliberate invasion or a bona fide dispute over the boundary and/or title. *See Gilman*, 235 Ga. at 351, 219 S.E.2d 447; *Standard Oil Co. v. Mount Bethel United Methodist Church*, 230 Ga. 341, 196 S.E.2d 869 (1973). A "reckless disregard" of property rights, though conceivable, was not realistic within the fact patterns of these cases, in which the courts chose between finding that the trespassing party had acted in good or bad faith.

With this potential conflict in Georgia law in mind, and reading all factual questions in favor of the non-moving party, the Court cannot hold as a matter of law that the award of $150,000 in punitive damages was based solely upon factual findings that would also satisfy the requirements of 11 U.S.C. § 523(a)(6). Given the above-related dispute among Georgia courts and the lack of findings of fact or conclusions of law in the arbitrator's decision, there is no way to know how *Carnall* interpreted the punitive damages statute.

## B. JUDICIAL POLICY

In addition to the previous holding, strong policy reasons support the Court's decision not to utilize the arbitration judgment, through collateral estoppel, in the

present nondischargeability action, and accordingly the Court exercises its discretion not to do so. *McWhorter,* 887·F.2d at 1566. Debts are presumed to be dischargeable in bankruptcy, and the limited exceptions to discharge contained in the Bankruptcy Code must be construed strictly in favor of the debtor. *Gregg v. Rahm (In re Rahm),* 641 F.2d 755, 756–57 (9th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981); 3 *Collier on Bankruptcy* ¶ 523.05A at 523–19 (15th ed.1994). In the present motion, Norrell is asking the Court to declare that a debt of $150,000 is nondischargeable in bankruptcy based solely on an award *without any specific factual findings.* While this may not be a defect in so far as establishing Clayton and Wolff's liability for the debt absent bankruptcy relief, the Court is loathe to declare that it is sufficient for use via collateral estoppel in a nondischargeability case, a claim legally different from any state law violation. *See Brown v. Felsen,* 442 U.S. at 134–39, 99 S.Ct. at 2211–13.

■ Federal Courts have statutory responsibilities to make detailed findings of fact and conclusions of law in cases tried without a jury. *See* Fed.R.Civ.P. 52; Fed.R.Bankr.P. 7052. This practice, derived from courts of equity,[4] helps protect the individual findings of fact, under the "clearly erroneous" standard, from subsequent review. *Anderson v. City of Bessemer City, North Carolina,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. United States Gypsum Co.,* 333 U.S. 364, 394–95, 68 S.Ct. 525, 541–42, 92 L.Ed. 746 (1948). Similarly, in order for this Court to grant full faith and credit to a "foreign" judgment, especially in an area as delicate as nondischargeability in which this Court has sole jurisdiction,[5] detailed findings of fact are virtually a necessity. As Norrell itself acknowledges (with regard to actual damages), the present case provides a prime example of how subsequent proceedings can be complicated by a lack of specific findings.

The Court is not aware of whether detailed factual findings are generally provided in the commercial arbitration industry. However, if bankruptcy courts refuse to accept arbitration awards without such findings for the purpose advocated in the present case, *i.e.,* collateral estoppel and summary judgment in a nondischargeability action, very soon judgment creditors will be insisting that the arbitrators make detailed findings of fact. This change will enable successive courts to enforce arbitrated decisions with the certainty that they are giving full faith and credit only to those findings actually reached by the arbitrator, when holdings such as *Nourbakhsh* are not implicated through a default.

The Court notes that similar hopes were once voiced by commentators after the Supreme Court's decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *See* Spatt, "Res Judicata and Collateral Estoppel", 42 Arb.J. 61, 63 (1987); Jacobs, "Confusion Remains Five Years After Alexander v. Gardner–Denver", 30 Lab.L.J. 623, 629–30 (1979); Isaacson & Zifchak, "Fair Employment Forums After Alexander v. Gardner–Denver Co.: Separate and Unequal", 16 Wm. & Mary L.Rev. 539 (1975); Siber, "The Gardner–Denver Decision: Does It Put Arbitration in a Bind?", 25 Lab.L.J. 708, 714–17 (1974). However, those beliefs have often been sidestepped by the use of arbitration and its results as a total substitution for litigation, instead of just an intermediate step. *See* Motomura, "Arbitration and Collateral Estoppel", 63 Tul.L.Rev. at 72–73.

No such sidestep can occur when the arbitral award leads to the bankruptcy of one of the parties. Unless the arbitration judgment creditor and the debtor negotiate a payment of the judgment in part or whole notwithstanding the 11 U.S.C. § 524 discharge, as in the case at bar, a bankruptcy court must determine the preclusive effect of the arbitral award for purposes of a complaint under either 11 U.S.C. §§ 523 or 727. Parties in arbitration should constantly keep in mind the potential effects of bankruptcy on their dispute.

---

4. *See* 5A *Moore's Federal Practice* ¶ 52.01[7] at 52–8 through 9 (2nd ed.1994).

5. *See Houtman v. Mann (In re Houtman),* 568 F.2d 651, 653 (9th Cir.1978).

### VI. *CONCLUSION*

Norrell's motion for summary judgment on its complaint to hold $150,000 in punitive damages owed to it by Clayton and Wolff nondischargeable in bankruptcy is denied without prejudice. Counsel for Clayton and Wolff shall prepare a form of order consistent with this Decision. Counsel for Norrell shall review as to form.