**In re: Petition for Naturalization of Charles Peter DUNCAN.**

**Charles Peter DUNCAN, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 82–4322.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1983.

Decided Aug. 19, 1983.

Edward V. Anderson, Pillsbury, Madison & Sutro, San Francisco, Cal., for petitioner-appellant.

Leonard A. Rosenberg, U.S. Dept. of Justice, Washington, D.C., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for respondent-appellee.

Before ANDERSON, SKOPIL and NORRIS, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Duncan appeals from the denial of his petition for naturalization. The INS recommended denial because Duncan declined

to answer four questions on the Application to File Petition for Naturalization dealing with prior criminal activity, membership in organizations, belief in Communism, and moral character. Duncan objected to the four questions on grounds they violated his First Amendment rights of free speech and association, and his Fifth Amendment due process and self-incrimination interests. We affirm on grounds of issue preclusion without reaching the constitutional questions.

## I.

Duncan is a native of Great Britain and a physical oceanographer by profession. He became a lawful permanent resident of the United States on May 20, 1971, and married an American citizen in 1972. At the time of his application for citizenship in 1977, Duncan was a resident of Puerto Rico. He was interviewed by an INS officer, who, having found him qualified, submitted a petition on his behalf seeking an order of naturalization. Duncan subsequently moved to Washington, D.C. and his petition was transferred and set for hearing before the United States District Court for the Eastern District of Virginia.

Before the petition came on for hearing and adjudication, the INS presented Duncan with INS Form N445 seeking information on developments subsequent to the initial filing. Objecting to several of the questions on constitutional grounds, Duncan declined to provide the information called for by Form N445. On December 18, 1978, Duncan's petition was denied for refusal to complete the required forms and prosecute the petition. The district court in Virginia determined that Duncan's constitutional challenge was without merit. In its denial of Duncan's motion for reconsideration, the court explained that Duncan may at any time reapply for naturalization, so long as he answered all questions listed in Form N445.

In July 1979, Duncan moved to California and reapplied for citizenship in San Francisco. During the preliminary investigation and examination, Duncan refused to answer questions on Form N400, the Application to file Petition for Naturalization, dealing with prior criminal activity, membership in organizations, belief in Communism, and moral character. Duncan further refused to swear to the petition unless Averment 12 (attesting to non-membership in various organizations prohibited by the Act) was deleted. The form was processed by the INS but Duncan was advised that his refusals to answer and deletions would be bases for the INS' recommending his petition be denied.

The designated naturalization examiner found that the questions Duncan refused to answer were all subjects of proper inquiry to a petitioner for naturalization in that they "give effect" to the provisions of the naturalization statutes, within the meaning of 8 U.S.C. § 1443(c). Holding that Duncan had failed to meet his burden of proving naturalization eligibility in several respects, the designated examiner found it unnecessary to decide whether Duncan actually had constitutional justifications for his refusals to answer. He recommended Duncan's petition be denied. The district court adopted most of the designated examiner's findings of fact and conclusions of law and denied the petition.

## II.

We begin with the effect of the Virginia court's order denying Duncan's original petition for naturalization. While the district court alluded to the preclusive effect of that order on this proceeding, it did not approach it directly in terms of the doctrine of issue preclusion. Instead, it characterized the Virginia proceeding as imposing on Duncan an order not to re-petition for naturalization unless he answered all questions on the application forms. The court based its denial of Duncan's petition, in part, on the determination that Duncan had violated the Virginia order by refusing to answer similar questions in California.

We characterize the Virginia order somewhat differently, although our result is the same. Our reading of the record indicates the Virginia court did not enjoin Duncan from re-petitioning for naturalization, nor

did it formally order him to answer Form N445's questions if he did re-petition. It merely explained to him that he had the right to re-petition at any time, but that he must answer all questions on Form N445 because his constitutional challenge would not again be entertained. It is obvious the Virginia court intended its judgment to be conclusive on the issue of Duncan's constitutional right to refuse to answer questions on Form N445. Thus, the doctrine of issue preclusion is squarely raised by the record.

■ We can affirm on any basis presented by the record. *M.O.S. Corp. v. John I. Haas Co.,* 375 F.2d 614, 617 (9th Cir.1967). Duncan suffers no prejudice from our analyzing the case in this manner since he devoted a portion of his briefs to issue preclusion. Moreover, we are directed to consider non-constitutional bases for disposition before proceeding to pass upon constitutional questions. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693, 702 (1981); *Polar Shipping Limited v. Oriental Shipping Corp.,* 680 F.2d 627, 630 (9th Cir.1982).

### III.

■ The doctrine of issue preclusion forecloses relitigation of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment in a prior action between the parties. *Segal v. American Telephone & Telegraph Co.,* 606 F.2d 842, 845 (9th Cir.1979). The doctrine encompasses both the principles of collateral and direct estoppel. Issue preclusion in a second action on the same claim is designated direct estoppel, while issue preclusion in a second action brought on a different claim is termed collateral estoppel. *Restatement (Second) of Judgments* § 27 comment b (1982); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4402, at 9–10 (1981).

■ Initially, we must decide whether a naturalization case is appropriate for the application of litigation-foreclosure principles. The Supreme Court has said that "while a proceeding for the naturalization of an alien is, in a certain sense, a judicial proceeding, being conducted in a court of record and made a matter of record therein, yet it is not in any sense an adversary proceeding." *Johannessen v. United States,* 225 U.S. 227, 236–237, 32 S.Ct. 613, 614–615, 56 L.Ed. 1066, 1069–70 (1912). The *Johannessen* Court went on to explain that in the typical naturalization proceeding, the petitioner proceeds *ex parte* and is not required to make the government a party nor give it notice. *Id.* at 237, 32 S.Ct. at 615, 56 L.Ed. at 1070. For these reasons, the Court in *Johannessen* rejected the defendant's claim that a prior judgment of naturalization precluded the government from instituting denaturalization proceedings. *Accord Maney v. United States,* 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156 (1928). Later, in *United States v. Ness,* 245 U.S. 319, 38 S.Ct. 118, 62 L.Ed. 321 (1917), the Court held that the initiation of denaturalization proceedings was not foreclosed even though the Immigration and Nationality Act allowed the government to participate as an adverse party in the original naturalization proceedings. The *Ness* Court relied on Congress' clear intent "to afford cumulative protection against fraudulent or illegal naturalization." *Id.* at 327, 38 S.Ct. at 121, 62 L.Ed.2d at 324.[1]

On the other hand, the Supreme Court has made clear that a naturalization proceeding is in every sense a "case" and a decree of naturalization is a "judgment." *Tutun v. United States,* 270 U.S. 568, 46 S.Ct. 425, 70 L.Ed. 738 (1926). That is so notwithstanding Congress' provision for the denaturalization of persons whose citizenship was fraudulently or otherwise illegally procured. *Id.* at 576, 46 S.Ct. at 426, 70

---

1. In *United States v. Pandit,* 15 F.2d 285 (9th Cir.1926), *cert. denied,* 273 U.S. 759, 47 S.Ct. 473, 71 L.Ed. 878 (1927), this court took a position directly contrary to that expressed in *Ness.* Given the Supreme Court's clear and obvious holdings both prior and subsequent to *Pandit,* we do not consider the case to be binding authority. *See LeVick v. Skaggs Co.,* 701 F.2d 777, 778 (9th Cir.1983) (panel may reject Ninth Circuit precedent subsequently undermined by Supreme Court).

L.Ed. at 741. It is also true notwithstanding the petitioner's continuing right to reapply for naturalization. *Id.* We see no reason why constitutional issues decided by the district court in arriving at its judgment on a petition for naturalization should not be accorded the same preclusive effect they enjoy in other judicial processes.

■ In the instant case, the judgment of the Eastern District of Virginia to deny Duncan's petition was rendered only after considering his constitutional arguments. The INS contested Duncan's petition and recommended it be denied. Duncan presented arguments against that recommendation. The litigation was, beyond any doubt, adversarial. Duncan moved the court to reconsider its judgment but it declined. At that point, the order was appealable to the United States Court of Appeals for the Fourth Circuit, where Duncan could have raised precisely the constitutional arguments he raises here. Duncan chose not to appeal, but instead to reapply for naturalization and raise his constitutional argument anew in another federal district court. Under these circumstances, we will not hesitate to analyze this case in terms of issue preclusion.

## IV.

■ Only a valid judgment will foreclose subsequent litigation. *Davis v. Chevy Chase Financial Limited,* 667 F.2d 160, 172 (D.C.Cir.1981). Duncan argues the Virginia court's judgment was invalid because that court lacked jurisdiction. Under 8 U.S.C. § 1421(a), "[t]he jurisdiction of the courts herein specified to naturalize persons shall extend only to such persons resident within the respective jurisdiction of such courts." The record establishes that when he petitioned the Eastern District of Virginia for naturalization, Duncan was a resident of Washington, D.C.

We find no merit in Duncan's argument. He was a resident of Puerto Rico when he originally petitioned for naturalization. Before his petition was acted upon, he notified the INS of his intent to become employed in Virginia and requested his peti-

tion be transferred. At that time he had not located housing so he gave the INS his work address in Virginia. His petition was transferred there, and he submitted himself to the district court for the Eastern District of Virginia without objection, even though he later established residency in Washington, D.C. On these facts, we must decide whether the last sentence of 8 U.S.C. § 1421(a) confers subject matter jurisdiction, which is not waivable, or venue, which can be waived.

■ We construe the last sentence of 8 U.S.C. § 1421(a) as a special venue provision. We have found no decisional authority interpreting that sentence, but Professor Moore's leading treatise includes § 1421(a) among a list of special venue provisions. 1 J. Moore, *Moore's Federal Practice* ¶ 0.144 [14.–17], at 1575 (2d ed. 1982). Moreover, we would think it entirely clear that the last sentence of § 1421(a) involves venue were it not for Congress' unfortunate choice of "jurisdiction" terminology. We believe the term "jurisdiction" in that sentence is merely imprecision. An analogous statute is 46 U.S.C. § 688, a provision of the Jones Act that states: "jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." That provision has always been read as referring only to venue. *See Pure Oil Co. v. Suarez,* 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966).

Our construction is consistent with the general distinction between jurisdiction and venue, the former encompassing the court's power to adjudicate and the latter simply the place where that authority may be exercised. 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3801, at 5 (1976). The first sentence of § 1421(a) vests specified courts with the power to entertain petitions for naturalization; the second sentence defines the particular geographical area within which the petition must be brought.

■ Having concluded the last sentence of § 1421(a) is a venue provision, we also

conclude Duncan waived his right to assert it when he failed to object during the Virginia proceeding. Venue is a privilege that is waived if not timely asserted. *Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 2714, 61 L.Ed.2d 464, 472 (1979); 28 U.S.C. § 1406(b).

Our next task is to decide whether there is sufficient identity between the legal issue sought to be precluded in Duncan's second action and that litigated and decided in the first action. Duncan argues the issue is different because the relevant questions on Forms N445 and N400 were not identical. We disagree. It is not necessary that the forms track each other word-for-word so long as the questions are sufficiently similar to give rise to an identical legal issue. *See Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *Starker v. United States,* 602 F.2d 1341, 1344–47 (9th Cir.1979). In any event, the operative language of question 3 on Form N445 *is* virtually verbatim the language of questions 17(a) and (b) on Form N400.[2] Question 26 on Form N400 likewise includes every operative provision of question 7 on Form N445.[3] It is only question 4 on Form N445 that differs substantially from questions 18 and 19 on Form N400.

We do not see the language differences as raising different legal issues.

Question 4 on Form N445 reads: "Have you joined any organization, including the Communist Party, or become associated or connected therewith in any way?" Question 18 on Form N400 requests the applicant to "list your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society or similar group in the United States or in any other country or place, and your foreign military service." Question 19 on Form N400 further asks:

(a) Are you now, or have you ever, in the United States or in any other place, been a member of, or in any other way connected with or associated with the Communist Party?

(b) Have you ever knowingly aided or supported the Communist Party directly, or indirectly, through another organization, group or person?

(c) Do you now or have you ever advocated, taught, believed in, or knowingly supported or furthered the interests of communism?

We read question 4 on Form N445 as an abbreviated version of questions 18 and 19

2. Question 3 reads:
 Have you knowingly committed any crime or offense, for which you have not been arrested; or have you been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations?
 Questions 17(a) and (b) read:
 The law provides that you may not be regarded as qualified for naturalization, if you knowingly committed certain offenses or crimes, even though you may not have been arrested. Have you ever, in or outside the United States:
 (a) knowingly committed any crime for which you have not been arrested?
 (b) been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, including traffic regulations?

3. Question 7 reads:
 The law provides that a petitioner for naturalization shall not be regarded as a person of good moral character who, at any time after the filing of the petition for naturalization,

has believed in polygamy or been a polygamist; received income mostly from illegal gambling; committed adultery; been a prostitute or procured anyone for prostitution; knowingly and for gain encouraged or helped an alien to enter the United States illegally; been an illicit trafficker in drugs or marihuana; or has been a habitual drunkard. Have you been such a person or committed any of these acts?
Question 26 reads:
 The law provides that you may not be regarded as qualified for naturalization if, at *any* time during the period for which you are required to prove good moral character, you have been a habitual drunkard; committed adultery; advocated or practiced polygamy; have been a prostitute or procured anyone for prostitution; have knowingly and for gain helped any alien to enter the United States illegally; have been an illicit trafficker in narcotic drugs or marihuana; have received your income mostly from illegal gambling, or have given false testimony for the purpose of obtaining any benefits under this Act. Have you ever, *anywhere,* been such a person or committed any of these acts?

on Form N400. Implicit within the general terminology of question 4—"have you ever joined *any* organization . . . or become associated or connected therewith in *any* way" —are all of the specific questions asked in questions 18 and 19 pertaining to membership in, affiliation with, advocating or furthering the interests of communism.

Duncan bases his challenge to questions 18 and 19 on vagueness and overbreadth grounds, as well as on the First Amendment's guarantees of free speech and association. Each of those legal issues is raised by question 4 and the district court for the Eastern District of Virginia found them to be without merit. If this court were to entertain Duncan's arguments regarding questions 18 and 19, we would be again deciding the precise legal issues litigated in Virginia. We decline to do so.

Duncan also argues the Virginia court's judgment failed to satisfy the "finality" element of issue preclusion. Duncan grounds his argument on the terminology of the Virginia court's denial of his petition for reconsideration: "The petitioner may at any time reapply for naturalization without prejudice. However, he must answer all questions listed in Form N445."

 As Duncan recognizes, a dismissal without prejudice is generally not considered an adjudication on the merits of a controversy and thus is not entitled to preclusive effect. 1B J. Moore, *Moore's Federal Practice* ¶ 0.409[1], at 1009 (2d ed. 1982). But that rule has no application here. The Virginia court's order was not a dismissal but rather a substantive denial of Duncan's petition after full consideration on the merits, including the constitutional issues. The record leaves no doubt as to the intention of the court. The "without prejudice" terminology was used to apprise Duncan of his right to re-petition for naturalization. The sentence directing Duncan to "answer all questions on Form N445" was clear notice that a district court would not again entertain his constitutional claims. His recourse from that order was appeal to the Fourth Circuit, not a new petition before another district court. The order of the Virginia court was "sufficiently firm"

to be accorded conclusive effect. *Luben Industries v. United States,* 707 F.2d 1037, 1040 (9th Cir.1983).

 Duncan's final argument is that issue preclusion is inappropriate where fundamental rights are at stake. The cases upon which he relies, *Mendoza v. United States,* 672 F.2d 1320 (9th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983), and *Title v. INS,* 322 F.2d 21 (9th Cir.1963), do not stand for so broad a proposition.

In *Mendoza,* the government was arguing against the offensive use of collateral estoppel by Filipino war veterans seeking naturalization. While holding the government collaterally estopped from re-litigating the veteran's rights, this court recognized the Supreme Court's admonition that "[u]nreflective invocation of collateral estoppel against parties with an ongoing interest in constitutional issues could freeze doctrine in areas of the law where responsiveness to changing patterns of conduct or social mores is critical." 672 F.2d at 1329 (quoting *Montana v. United States,* 440 U.S. at 163, 99 S.Ct. at 978). The distinction from our case is apparent. The entire *Mendoza* discussion was concerned with offensive use of collateral estoppel against the government, a situation where the policy of litigation-foreclosure may sometimes of necessity have to give way to the public's interest in obtaining a redetermination of fundamental rights. We certainly have no quarrel with that principle, but it simply has no application here. The only party's rights that are frozen are Duncan's. The government cannot assert defensively the effect of the Virginia judgment against other petitioners, since those petitioners were not parties to the Virginia proceeding. The public interest discussed by the Supreme Court in *Montana v. United States* is not present here.

Duncan's reliance on *Title* is similarly misplaced. Title had been denaturalized for procuring a certificate of naturalization by concealing his membership in the Communist party. At a subsequent deportation proceeding, the government asserted that the denaturalization proceeding collaterally estopped Title from denying membership in

the Communist party. This court refused to allow collateral estoppel because to do so deprived Title of his right to a hearing under § 242 of the Immigration and Naturalization Act.

*Title* is an example of the rule that issue preclusion should not be applied when it would result in manifest injustice to a party. *Title,* 322 F.2d at 24. The instant case presents no such compelling facts. Duncan had every opportunity to litigate his constitutional claims in the Eastern District of Virginia. He did so and he lost. There is no indication that due process was not afforded nor statutory requirements fulfilled. We see no manifest injustice in precluding him from raising those issues again.

AFFIRMED.