In re Bonnie MOORE, aka Bonnie Moore Brown, an Individual, Debtor.

Brennan J. NEWSOM, Franza Giffen Newsom, and Brennan J. Newsom as Attorney in Fact for Rene Uraconiso, an Individual (deceased), Plaintiffs,

v.

Bonnie MOORE, an Individual, aka Bonnie Moore Brown, an Individual, Defendant.

Bankruptcy No. 93–34121DTC. Adv. No. 93–3520DM.

United States Bankruptcy Court, N.D. California.

Sept. 7, 1995.

David S. Levin, Murray & Murray, Palo Alto, CA, for defendant.

David J. Cook, Cook, Perkiss & Lew, San Francisco, CA, for plaintiffs.

## MEMORANDUM DECISION

DENNIS MONTALI, Bankruptcy Judge.

### I. INTRODUCTION

Plaintiffs Brennan J. Newsom, Franza Giffen Newsom, and Brennan J. Newsom as Attorney In Fact for Rene Uraconiso, an Individual (deceased) (collectively "Plaintiffs") filed a complaint (the "Nondischargeability Complaint") seeking to have the sum of $214,295.91 in compensatory and punitive damages awarded under a state court default judgment against defendant Bonnie Moore ("Defendant" or "Moore") declared nondischargeable under 11 U.S.C. §§ 523(a)(4) and (6). Both sides have moved for summary judgment. For the reasons stated below, the court will deny Defendant's motion and grant partial summary judgment in favor of Plaintiffs and against Defendant in the amount of $159,394.55 plus interest because this court is obliged to follow California law concerning the collateral estoppel effect of a default judgment, rather than federal law that would require matters actually to be litigated before they could be binding in a subsequent adversary proceeding seeking to hold the underlying judgment nondischargeable.

### II. FACTUAL BACKGROUND

Moore filed her voluntary Chapter 7 petition on September 15, 1993. Prior to that time she had been employed as an accountant at the law firm of Plaintiffs Brennan J. Newsom, individually, and Franza Giffen Newsom (the "law firm"). During the course of Moore's employment, Richard Brown, who was at that time Moore's husband, retained the law firm to represent Brown and his two children in a wrongful death action involving Brown's deceased former wife. Although the wrongful death action was ultimately settled for $750,000, Moore was dissatisfied with the law firm's handling of the matter for her then husband.

After the wrongful death action was settled, Moore was assigned to prepare certain tax records in connection with a trust estate being handled by the law firm. Subsequently disputes arose over Moore's claim for payment for services she had rendered and the claim by Plaintiffs that she had wrongfully

removed certain binders (and financial documentation and data contained therein) belonging to Brennan J. Newsom.

### A. The Underlying State Court Action and Default Judgment

On March 30, 1990, Plaintiffs filed a complaint against Moore in the San Francisco Superior Court (Case No. 917692) (the "Complaint"). The Complaint contained seven causes of action. Moore filed an answer on September 18, 1990 and she filed a first amended answer and cross complaint on October 18, 1990. An order striking the first amended answer and cross complaint was issued by the court on January 3, 1991, and Moore's default was thereafter entered. On December 30, 1992, following a default prove-up hearing conducted on November 9, 1992, the court issued its Default Judgment After Hearing (the "Default Judgment"). The Default Judgment awarded Plaintiffs compensatory damages of $64,295.91 and punitive damages of $150,000. The causes of action and damages awarded under each in the Default Judgment are summarized as follows:

First Cause of Action (Conversion) (the alleged taking of binders pertaining to the financial affairs of Rene Uraconiso).

Compensatory Damages: $6,894.55
Punitive Damages: $12,500.00

Second Cause of Action (Claim and Delivery) (referring to the same binders mentioned in the First Cause of Action).

Compensatory Damages: $6,011.25[1]
Punitive Damages: $12,500.00

Third Cause of Action (Slander) (alleged statements made by Moore about Brennan J. Newsom's embezzlement of funds and his and Franza Giffen Newsom's incompetence as attorneys).

Compensatory Damages: $20,000.00
Punitive Damages: $50,000.00

Fourth Cause of Action (Libel) (an alleged letter written by Moore repeating the embezzlement accusations directed at Brennan J. Newsom).

Compensatory Damages: $20,000.00
Punitive Damages: $50,000.00

Fifth Cause of Action (Willful Infliction of Emotional Distress) (alleged attempts by Moore to become the beneficiary of an illegal trust fund involving assets of her stepchildren; the taking of books and documents; extortion by means of a letter threatening to bring to the attention of authorities Brennan J. Newsom's alleged embezzlement of Rene Uraconiso's funds).

Compensatory Damages: $101.20
Punitive Damages: $–0–

Sixth Cause of Action (Negligence) (failure of Moore to prepare information necessary to obtain extensions of time to file tax returns with the Internal Revenue Service).

Compensatory Damages: $11,288.91
Punitive damages: $25,000.00[2]

Seventh Cause of Action (Temporary Protective Order and Injunction) (to prevent Moore from entering the law firm's offices).

No damages awarded.

### B. The Nondischargeability Complaint

On November 15, 1993, Plaintiffs filed in this court a Complaint To Exempt Debt From Discharge under Bankruptcy Code § 523(a)(4 & 6) (the "Nondischargeability Complaint"). They allege six separate claims for relief, as follows[3]:

Count One—Injury to Person and Property—11 U.S.C. § 523(a)(6) (Conversion of Property of Another)—The Nondischargeability Complaint provides more detail than the First Cause of Action of the Complaint by describing the relationship among Plaintiffs and Defendant and alleging that the

---

**1.** It is unclear on what basis money damages were awarded since "claim and delivery" is a provisional remedy (California Code of Civil Procedure section 511.010, et seq.) and not a substantive cause of action. It appears that the compensatory damages awarded were for detention of files.

**2.** It is unclear on what basis punitive damages were awarded since they were not sought in the

Complaint nor would they be recoverable for mere negligence.

**3.** While Defendant may contest these allegations, and argue that material disputed facts prohibit the award of summary judgment, factual disputes are irrelevant here where the court's task is to determine whether the Default Judgment will support a summary judgment for nondischargeability in this court.

purported conversion injured the persons of Plaintiffs, constituting a shock to their nervous systems, loss of sleep, general sickness and deprivation and loss of privacy. Nevertheless, the thrust of the count is the same as the First Cause of Action in the Complaint, namely conversion.

Count Two—Breach of Fiduciary Duty—11 U.S.C. § 523(a)(4) (Embezzlement and Taking by Fiduciary)—This count incorporates the allegations of Count One, but adds the charge that Defendant breached a fiduciary duty to Plaintiffs.

Count Three—Injury to Person and Property—11 U.S.C. § 523(a)(6) (Libel and Slander)—This count appears to collapse the Third Cause of Action and the Fourth Cause of Action of the Complaint, charging Defendant with libel and slander in connection with oral and written statements made by her.

Count Four—Embezzlement and Breach of Fiduciary Duty—11 U.S.C. § 523(a)(4) (Taking of Private and Confidential Information)—This count appears to be little more than a repleading of Count Two.

Count Six[4]—Malicious Injury To Another—11 U.S.C. § 523(a)(6) (Extortion)—This count replicates to some extent the allegations of the Fifth Cause of Action of the Complaint.

Count Four (sic)—Malicious Injury to Another—under § 523(a)(4) (Wrongful Prosecution of Administrative Charges)—There is no corresponding Cause of Action in the Complaint, although Plaintiffs argue in their Counter–Motion (as defined below) that the damages sought on this count are included within damages awarded in the Default Judgment on the First Cause of Action, namely $6,894.55 in attorneys' fees incurred in the defense of a State Bar investigation of wrongful conduct initiated by Defendant.

The Nondischargeability Complaint does not contain a count that replicates the Sixth Cause of Action of the Complaint (negligence). It does, however, seek to have the court declare as nondischargeable the entire Default Judgment. Since the Sixth Cause of Action included $11,288.91 in compensatory damages and $25,000 in punitive damages, that portion of the Default Judgment may not be held to be nondischargeable under any provision of 11 U.S.C. § 523(a).

On January 3, 1995, Moore filed a Motion for Summary Judgment or, in the Alternative, for Summary Adjudication of Issues (the "Motion") on the grounds that (a) Plaintiffs cannot establish the elements necessary to prevail on each of their underlying nondischargeability claims and (b) Moore's affirmative defenses bar Plaintiffs' claims as a matter of law.

Plaintiffs responded with a Counter–Motion for Summary Judgment or Adjudication of Issues (the "Counter–Motion") on February 24, 1995. Plaintiffs contend that each of the elements necessary to support nondischargeability was necessarily determined by virtue of the Default Judgment, that Moore is therefore collaterally estopped from raising any issues of fact or defenses to the underlying claims, and that the collateral estoppel effect of the Default Judgment entitles Plaintiffs to summary judgment that the damages awarded pursuant to the Default Judgment are nondischargeable.[5]

## III. DISCUSSION

### A. *Collateral Estoppel Principles*

■ The United States Supreme Court has recognized that the doctrine of collateral estoppel[6] applies in dischargeability proceed-

---

**4.** There is no Count Five.

**5.** At the hearing on this matter, counsel for Defendant argued that the Counter–Motion was not properly before the court because Plaintiffs had failed to file and serve a notice of their motion. Because Plaintiffs' motion was brought in response to Defendant's Motion, a separately noticed motion was unnecessary. See former L.R. 7–701(a)(5), incorporating L.R. 220–6. Furthermore, as Plaintiffs' papers were entitled "Motion for Summary Judgment", Defendant's counsel

cannot be heard to complain that he was unaware that Plaintiffs, in addition to opposing the Motion, were also seeking summary judgment in their favor.

**6.** Although Plaintiffs argue repeatedly that the doctrine of *res judicata* (claim preclusion) applies, that doctrine is inapplicable to cases to determine the dischargeability of a debt in bankruptcy. *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). *See also, In re Berr,* 172 B.R. 299, 305 n. 4 (9th Cir. BAP 1994).

ings. *Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir.1994). Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in a prior judicial proceeding if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in the earlier case. *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979).

■ Federal courts, including bankruptcy courts, are required by statute to give full faith and credit to state court judicial proceedings. 28 U.S.C. § 1738 (1982).[7] *Matter of Lockard*, 884 F.2d 1171 (9th Cir.1989). This statutory requirement has been interpreted to mean that a federal court must give a state court judgment the same preclusive effect it would receive in that state. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379–82, 105 S.Ct. 1327, 1331–33, 84 L.Ed.2d 274 (1985) *reh'g denied* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985) (full faith and credit statute "directs a federal court to refer to the preclusion law of the State in which judgment was rendered"); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–82, 104 S.Ct. 892, 895–96, 79 L.Ed.2d 56 (1984); *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1520 (9th Cir.1987); *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir.1994); *Matter of Lockard*, *supra*, at 1174 (court applied Arizona law of issue preclusion to determine whether bankruptcy court erred in giving preclusive effect to Arizona court determination that surety bond constituted property of the estate). On the other hand, courts apply the federal law

of collateral estoppel in determining the preclusive effect of a prior federal court judgment. *See, e.g., In re Daley*, 776 F.2d 834, 838 n. 7 (9th Cir.1985); *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983).

B. *The Court is Bound to Apply State Law in Determining Whether the Default Judgment Should be Given Collateral Estoppel Effect*

■ Quite recently the Ninth Circuit and the Bankruptcy Appellate Panel for the Ninth Circuit have each addressed the choice of law issue with respect to collateral estoppel in nondischargeability actions. In *Bugna*, 33 F.3d at 1057, the Ninth Circuit stated that the collateral estoppel effect of a California fraud judgment is governed by California law. The court noted that in determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the state's law of collateral estoppel, citing 28 U.S.C. § 1738. *Id.* at 1057. The court cited *In re St. Laurent*, 991 F.2d 672 (11th Cir.1993), a case that upheld the application of Florida law on a collateral estoppel issue in bankruptcy.

In summarizing the California law on the point, the *Bugna* court noted that collateral estoppel bars relitigation when "(1) the issue decided in the prior action is identical to the issue presented in the second action; (2) there was a final judgment on the merits; and (3) the party against whom estoppel is asserted was a party ... to the prior adjudication." *Bugna*, 33 F.3d at 1057, citing *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1520 (9th Cir.1987).[8]

The Bankruptcy Appellate Panel referred to Florida law to consider the effect of a prior state court default judgment in *In re*

They also argue that collateral estoppel (issue preclusion) applies, thus permitting the court to reach the conclusions set forth in this Memorandum Decision.

7. 28 U.S.C. § 1738 provides, in part, as follows:
    The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories....
    Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the

same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

8. The court did not state that California law requires the underlying action actually to have been litigated. It did, however, note that the bankruptcy court had erroneously applied federal law of collateral estoppel in determining the effect of the prior judgment.

*Nourbakhsh,* 162 B.R. 841 (9th Cir. BAP 1994). There a Florida state court had entered a default judgment against the debtor for failing to answer a complaint alleging state law fraud, even though the debtor had previously questioned personal jurisdiction over him, and had responded to some discovery. In affirming the bankruptcy court's ruling that the debtor was precluded from litigating the issue of fraud under 11 U.S.C. § 523(a)(2)(A), the Bankruptcy Appellate Panel concluded that Florida law treated a default judgment as conclusively establishing between the parties the truth of all material allegations contained in the complaint and every fact necessary to uphold the default judgment. The court decided that a Florida state court would hold that entry of a default judgment is tantamount to a dispute that has been "actually litigated". *Nourbakhsh,* 162 B.R. at 844. In reaching this result the court relied upon four bankruptcy court decisions coming from three different districts in Florida, each of which it cited for the proposition it advanced in the decision.

The court also looked at the process leading to the entry of default in order to insure that the elements of fraud were adequately established. It noted the preliminary participation by the debtor's counsel and the fact that the state court held two hearings on the default, including a prove-up hearing resulting in the findings and conclusions adverse to the debtor.

A strongly worded dissent appears in the *Nourbakhsh* decision, arguing that 28 U.S.C. § 1738 does not require federal courts to apply state law to determine whether a state court default judgment should be given collateral estoppel effect in nondischargeability proceedings. *Nourbakhsh,* 162 B.R. at 847–853 (Russell, J. dissenting). The dissent in *Nourbakhsh* faults the majority for ignoring at least four circuit court of appeal opinions cited for the proposition that in bankruptcy dischargeability proceedings, default judgments are not entitled to collateral estoppel effect. *Id.* at 847. Those four cases, however, are readily distinguishable. The first, *Matter of McMillan,* 579 F.2d 289 (3d Cir. 1978) involved a state court default judgment that was obtained on a complaint that was inadequately pleaded to make a case for nondischargeability under § 17(a) of the former Bankruptcy Act. The "actually litigated" requirement was not found in the applicable (New Jersey) state law, but in the Restatement of Judgments § 68(1) (1942). A concurring opinion would have affirmed, based upon a bankruptcy policy exception to the full faith and credit principles set forth in 28 U.S.C. § 1738.

The second case cited by the dissent in *Nourbakhsh* was *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981), which involved a plaintiff who had a obtained a state court judgment in a personal injury action. The state court had held that there was no wantonness or willfulness on the part of the defendant. On appeal of a bankruptcy court decision denying nondischargeability on collateral estoppel grounds, the court determined that the particular findings by the state court were not clearly necessary to its prior decision, or at least were ambiguous. Thus, the decision was reversed, there being no collateral estoppel to be asserted against the plaintiff. There is no analysis of the underlying applicable state law although the court in *dicta* cites several cases for the proposition that default judgments do not collaterally estop litigation in subsequent bankruptcy cases.

The third decision relied on by the dissent in *Nourbakhsh* was *In re Gottheiner,* 703 F.2d 1136 (9th Cir.1983), a case which in turn cited three prior cases (including *McMillan* and *Spilman*) for the proposition that default judgments could not be used for collateral estoppel purposes in bankruptcy. The third decision relied on by the *Gottheiner* court was *Commonwealth of Mass. v. Hale,* 618 F.2d 143 (1st Cir.1980). There the court reviewed decisions dealing with collateral estoppel but expressly declined to answer the question of the effect of a prior default judgment in a subsequent bankruptcy proceeding since liability established in the underlying action (for willful violation of consumer protection laws) was found insufficient to support a judgment of nondischargeability in a case under former section 17(a) of the Bankruptcy Act.

Finally, the dissent in *Nourbakhsh* cited *In re Raynor*, 922 F.2d 1146 (4th Cir.1991). That decision did not turn on an interpretation of state law, but relied on the definition of "actually litigated" in the Restatement (Second) of Judgments § 27 (1982). The court noted that the bankruptcy court should determine "with particular care" whether the matters had been actually litigated in the prior action. *Raynor*, 922 F.2d at 1146, citing *Combs v. Richardson*, 838 F.2d 112, 113 (4th Cir.1988). Again as with the other decisions, there was no discussion of applicable state law.

The dissenting judge in *Nourbakhsh* wrote for the court in *In re Berr*, 172 B.R. 299 (9th Cir. BAP 1994), noting that in applying collateral estoppel, federal law is used to determine the preclusive effect of a prior federal judgment.[9] However, its statement to the effect that if the underlying judgment had arisen under state law the court would "nonetheless apply federal law" to determine the collateral estoppel effect of the judgment, *Berr*, 172 B.R. at 305, n. 5, appears to be contrary to the holding in *Bugna* which was handed down approximately one month prior to the *Berr* decision.[10]

■ Despite the scholarly and persuasive arguments of Judge Russell in his opinion for the court in *Berr* and in his dissent in *Nourbakhsh*, this court is compelled to follow the Ninth Circuit's directive in *Bugna* and will follow the Bankruptcy Appellate Panel's holding in *Nourbakhsh* that the preclusive effect of a state court judgment is to be determined by the law of the state whose court rendered the judgment. Accordingly, as the Default Judgment in this case was rendered by a California state court, this court must apply the California law of collateral estoppel to determine whether that judgment is to be given preclusive effect.

## C. Default Judgments Are Deemed to have been Actually Litigated and are Therefore Given Collateral Estoppel Effect Under Applicable California Law

■ The elements of collateral estoppel under California law have been restated on numerous occasions by the California Supreme Court and various courts of appeal. In *People v. Sims*, 32 Cal.3d 468, 484, 186 Cal.Rptr. 77, 651 P.2d 321 (1982) the court reiterated the traditional elements of collateral estoppel: (1) the issue necessarily decided at the previous hearing was identical to the one being relitigated; (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party. The court stated that implicit within those elements is that any issue actually litigated may be precluded. *Sims*, 32 Cal.3d at 484, 186 Cal.Rptr. 77, 651 P.2d 321. Thereafter the elements were restated in a slightly different form, namely that: (1) the issue to be precluded is identical to that in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the judgment in the former proceeding was final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Lucido v. Superior Court*, 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223 *cert. denied*, 500 U.S. 920, 111 S.Ct. 2021, 114 L.Ed.2d 107 (1991). *See also, Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1520 (9th Cir.1987).

The earliest California decision the court could find dealing with the effect of a default judgment in a subsequent action is *Fitzgerald v. Herzer*, 78 Cal.App.2d 127, 177 P.2d 364 (1947). *Fitzgerald* involved a default judgment against a defendant accused of

9. Neither of the two bankruptcy judges constituting the majority in *Nourbakhsh* participated in the panel in *Berr*.

10. The *Berr* court also relied on *In re Gottheiner*, 703 F.2d 1136 (9th Cir.1983) in support of its conclusion. In that case, however, the underlying judgment at issue was a federal court judgment and thus the Ninth Circuit was not faced with the issue of whether it was required to apply the state law of collateral estoppel under 28 U.S.C. § 1738 or whether an exception to the implementation of that statute was warranted in bankruptcy court nondischargeability proceedings.

driving an automobile "negligently, carelessly and recklessly," causing plaintiff's injuries due to "wanton, gross carelessness, recklessness and negligence". When the defendant filed bankruptcy, the plaintiff sought to have his debt excluded from discharge and relied (successfully) on the prior judgment. The court stated:

A judgment by default is as conclusive to the issues tendered by the complaint as if it had been rendered after answer filed and trial had on the allegations denied by the answer.... Such a judgment is res judicata as to all issues aptly pleaded in the complaint and defendant is estopped from denying in a subsequent action any allegations contained in the former complaint.

78 Cal.App.2d at 131, 177 P.2d 364. *See also Freeze v. Salot,* 122 Cal.App.2d 561, 566, 266 P.2d 140 (1954); *O'Brien v. Appling,* 133 Cal.App.2d 40, 42, 283 P.2d 289 (1955); *Accord, Flood v. Simpson,* 45 Cal.App.3d 644, 651 n. 12, 119 Cal.Rptr. 675 (1975).[11]

In a case refusing to extend collateral estoppel to matters not properly pleaded in a prior action resulting in a default judgment against the defendant, the California Supreme Court described the preclusive effect of a default judgment under California law as follows:

The doctrine of conclusiveness of judgments applies to a judgment by default with the same validity and force as to a judgment rendered upon a trial of issues, provided such judgment is regular and valid, and shows distinctly on what count or cause of action it was rested. *But the confession implied from the default is limited to the material issuable facts which are well pleaded in the declaration or complaint, and does not apply to issues which were not raised in the pleadings.* Nor, subject to the rule that the judgment is conclusive as to every fact necessary to uphold it, is a default judgment conclusive, in a subsequent suit on a different cause of action, against any defenses defendant may have, although the same defenses, if pleaded and proved in the former action, would have defeated plaintiff's recovery, because in the absence of a trial and hearing in the first suit, it cannot be said that such matters were adjudicated therein.

*Burtnett v. King,* 33 Cal.2d 805, 810–11, 205 P.2d 657, 660 (1949), *quoting English v. English,* 9 Cal.2d 358, 363–364, 70 P.2d 625 (1937). (Emphasis added.)

In *People v. Sims, supra,* the court was confronted with a situation where a criminal defendant sought to bar prosecution because an earlier administrative proceeding against her on the same facts had not been prosecuted by the initiating agency, and the matter had been resolved in her favor. This situation caused the California Supreme Court to address the "actually litigated" element it found to be implicit in collateral estoppel, the very element stated explicitly by the court shortly thereafter in *Lucido.* The court stated that an issue is actually litigated when it is properly raised by the pleadings, or otherwise, and is submitted for determination, and is determined, noting that a determination may be based on a failure of proof. The court cited as support for this statement Restatements (Second) of Judgments § 27 com. d. (1982) p. 225. That comment notes that a determination for collateral estoppel purposes may be based on a failure of pleading or of proof. Comment e, however, does exclude from the "actually litigated" context a judgment entered by confession, consent or default. Notwithstanding the language in the comment to the Restatement, the California Supreme Court did not exclude the default situation from its "actually litigated" definition, nor did it mention *Fitzgerald.*

In dissent, Justice Kaus commented that *Fitzgerald, supra,* was contrary to a subse-

11. Defendant argues that *In re Daley,* 776 F.2d 834 (9th Cir.1985), is the controlling Ninth Circuit case on whether an action which ends in a default judgment "actually litigates" an issue for the purposes of collateral estoppel in the context of a nondischargeability proceeding. In *Daley,* however, the underlying judgment at issue was a *federal court* default judgment. In determining the preclusive effect of a prior district court judgment, the court applied, as the applicable federal law, Restatement (Second) of Judgments, § 27 (1982), under which a default judgment is insufficient to give rise to collateral estoppel. *Daley,* 776 F.2d at 838 and n. 7, *citing In re Duncan,* 713 F.2d 538, 541 (9th Cir.1983). This view of the issue is rejected by this court.

**972**

quent California Supreme Court decision, *Clark v. Lesher*, 46 Cal.2d 874, 299 P.2d 865 (1956). *Sims*, 32 Cal.3d at 492, n. 3, 186 Cal.Rptr. 77, 651 P.2d 321 (Kaus, J., dissenting). However, the dissent did not mention *Burtnett v. King*, the Supreme Court's own decision that came after *Fitzgerald*. *Clark*, *supra*, refers to matters actually litigated as having been determined in the first action, but does not define the phrase "actually litigated" nor address the default situation.

While the question is a close one, and the California authorities are less than clear, the court believes that *Fitzgerald* has not been disapproved and that on the record presented in this instance, namely early participation in the case by Defendant and a subsequent prove-up hearing in the San Francisco Superior Court, a California court would apply California law to bind Defendant as to the matters necessarily decided that resulted in the Default Judgment.

■ The collateral estoppel effect of the Default Judgment therefore precludes Defendant from challenging any of the material factual issues that were both raised in the State Court pleadings and necessary to uphold the judgment. As explained below, this preclusive effect applies to the factual issue of malice, since malice was alleged in the Complaint and a finding of malice is necessary to uphold the punitive damage awards. Collateral estoppel does not apply, however, to preclude Defendant from raising any defenses applicable to the underlying state court claims that were neither raised nor necessary to uphold the decision.

D. *The Punitive Damages Awarded as Part Of The Default Judgment Necessarily Includes A Finding Of Malice*

■ To be nondischargeable, Defendant's conduct must be found to have been either "willful and malicious" under 11 U.S.C. § 523(a)(6) or constitute "fraud or defalcation

while acting in a fiduciary capacity, embezzlement, or larceny" under 11 U.S.C. § 523(a)(4). Accordingly, the doctrine of collateral estoppel would apply only if the State Court *necessarily* found (or necessarily would have to have found) either that Defendant's conduct was "willful and malicious" or that her conduct amounted to fraud or defalcation while acting in a fiduciary capacity.[12]

■ Although both libel and slander are intentional torts, such that to be liable a defendant must have intended the publication, malice or actual ill will is not an element of defamation. Witkin, *Summary of California Law*, Torts § 471 (9th ed. 1988). Similarly one may be found liable for the tort of conversion without any showing of wrongful intent. *Id.* at § 624. Nevertheless, a showing of malice in fact or actual malice is required to obtain punitive damages under California law. *Stewart v. Truck Ins. Exch.*, 17 Cal.App. 4th 468, 483, 21 Cal.Rptr.2d 338 (1993); *Ross v. Sweeters*, 119 Cal.App. 716, 724, 7 P.2d 334 (1932); Witkin, *Summary of California Law*, Torts § 471, § 1335.

Cal.Civ.Code § 3294(a) (Deering Supp. 1995), the statutory authorization for punitive damages, states the general rule as follows:

In an action for breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or *malice*, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

(Emphasis added.)

The statute defines "malice" as "conduct which is *intended* by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others". Cal.Civ.Code § 3294(c)(1) (Deering Supp.1995) (Emphasis added).[13]

---

12. No such fiduciary capacity was established in the state court, and thus Plaintiffs are not entitled to summary judgment on that theory. See Part E, *infra*.

13. The statute was amended in 1980 to include the definition of malice. As noted in *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 30,

122 Cal.Rptr. 218 (1975) certain California cases (which predated the 1980 amendment) included "reckless disregard" within the meaning of malice to sustain punitive damage awards. The court could find no cases that have utilized or referred to the "reckless disregard" standard since the 1980 amendment.

In the Ninth Circuit, the definition of "willful and malicious conduct" in terms of 11 U.S.C. § 523(a)(6) is set forth in *In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986) as follows: "[w]hen a wrongful act ... done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent proof of a specific intent to injure". Wrongful acts must be deliberate, even if the resulting damages are not intended, and acts taken merely in "reckless disregard" of the rights of others is insufficient. *Id.*

Similarly, as noted above, it appears that under California law, reckless conduct, as opposed to intentional conduct, is insufficient to sustain an award of punitive damages.

Defendant notes that courts from other jurisdictions have rejected the argument that "malice" may be inferred from an award of punitive damages. Defendant's Reply Br. at 9, citing *In re Yanks*, 95 B.R. 234 (Bankr. S.D.Fla.1989); *In re Geer*, 137 B.R. 37, 41 (Bankr.W.D.Mo.1991). *See also, In re Held*, 734 F.2d 628 (11th Cir.1984).[14] These cases are distinguishable, however, because they are based on the laws of other states that, unlike California, do not necessarily require a finding of intentional misconduct, as opposed to reckless conduct, to support a punitive damage award.

This distinction was analyzed in the recent case of *In re Clayton*, 168 B.R. 700 (Bankr. N.D.Cal.1994). In *Clayton*, the court could not hold as a matter of law that a punitive damage award made by an arbitrator under Georgia law was based solely on findings that would also satisfy the requirements of 11 U.S.C. § 523(a). In so ruling, the Court observed that there was an apparent conflict

in Georgia case law whether the Georgia punitive damage statute authorized punitive damages for conduct done in "reckless disregard" (which does not equate to the deliberate/intentional conduct required to find nondischargeability under 11 U.S.C. § 523(a)(6)) as opposed to conduct done with intentional disregard of the rights of another. Given the lack of any findings by the arbitrator, the court noted that it could not determine which standard the arbitrator used.

As discussed above, however, it appears that because "conscious disregard" is required for a finding of malice under the California statute since the 1980 amendment, "reckless disregard" is no longer sufficient to sustain a punitive damage award under California law. It therefore appears that under California law, punitive damage awards under Cal.Civ.Code § 3294 can only properly be made in response to wrongful acts that would, by definition, also violate 11 U.S.C. § 523(a)(6).[15]

From the foregoing the court concludes that a finding of malice of the type required under Cal.Civ.Code § 3294 was *necessary* to support the State Court's punitive damage awards on the First Cause of Action—Conversion, the Third Cause of Action—Libel and the Fourth Cause of Action—Slander, and in the absence of such a finding, the punitive damage award would have had to have been made in error. Although this court would have the power to review any written findings to determine whether or not such findings would support a finding of malice for nondischargeability purposes, in the absence of any such written findings, it would appear that, unless a patent error was evident in the record[16], this

---

**14.** In *Held*, the underlying state court award of punitive damages in a conversion action did not necessarily decide the question of willfulness and malice, since the jury may have made the award on grounds of mere reckless indifference to plaintiff's rights. Since those grounds were insufficient under 11 U.S.C. § 523(a)(6), the bankruptcy court was not precluded by collateral estoppel principles from considering whether the conversion was willful and malicious under 11 U.S.C. § 523(a)(6).

**15.** It should be noted that the First, Third, and Fourth Causes of Action of the Complaint con-

tained allegations of "malice," whereas there are no allegations of "reckless" conduct.

**16.** This appears to be the case with respect to the Superior Court's award of punitive damages on plaintiffs' negligence cause of action, in which punitive damages were neither sought by plaintiffs in the Complaint nor plead in plaintiff's Statement of Nature of Damages (Exh. B–11) filed in support of the Default Judgment. As noted by the court in *Burtnett v. King, supra:*

court would simply have to presume that the State Court's award of punitive damages was based both upon the proper standard for finding malice and based upon a proper evidentiary showing of malice in the record.

■ The result here is not unlike that in *In re St. Laurent*, 991 F.2d 672 (11th Cir. 1993). There the state court based its punitive damages award explicitly upon its finding of fraud. Because the punitive damages awarded were unavailable absent an independent finding of fraud, the rendering court's determination that the debtor defrauded the plaintiffs was held to be necessary and critical to its judgment. *Id.* at 677. Here, if the Default Judgment was erroneous, Defendant's remedies were through the appellate process in state court.[17]

In summary, collateral estoppel applies to preclude Defendant from re-litigating the issue of whether her conduct was willful and malicious (Complaint, First, Third and Fourth Causes of Action) for purposes of 11 U.S.C. § 523(a)(6) in this nondischargeability action.

E. *The Default Judgment Has No Collateral Estoppel Effect With Respect To The Issue of Nondischargeability Under 11 U.S.C. § 523(a)(4)*

■ Collateral estoppel does not apply to Plaintiffs' 11 U.S.C. § 523(a)(4) claims for two independent reasons. First, any finding that defendant's alleged wrongful conduct was committed in a fiduciary capacity is not *necessary* to uphold the decision. Second, even if such a finding were necessary to uphold the decision, it is well established in the Ninth Circuit that an express or statutory trust relationship must exist between the parties in order for a debt to be found nondischargeable under 11 U.S.C. § 523(a)(4). The meaning of "fiduciary ca-

pacity" under 11 U.S.C. § 523(a)(4) is a question of federal law. Federal law has consistently limited this term to express or technical trust relationships. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). Even though the concept of fiduciary is narrowly defined as a matter of federal law, "state law is to be consulted to determine when a trust in this strict sense exists." *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986); *In re Pedrazzini*, 644 F.2d 756, 758–59 (9th Cir.1981)); *In re Evans*, 161 B.R. 474, 477–78 (9th Cir. BAP 1993); *In re Woosley*, 117 B.R. 524, 528 (9th Cir. BAP 1990). No facts showing the existence of an express or statutory trust relationship were alleged in the Complaint. The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith (as alleged in the Complaint)—is inapplicable in the dischargeability context. *See In re Woosley, supra.* A mere employee/employer relationship, such as existed in this case, is insufficient under 11 U.S.C. § 523(a)(4). *In re Trovato*, 145 B.R. 575 (Bankr.N.D.Ill.1991). Defalcation by a fiduciary within the meaning of 11 U.S.C. § 523(a)(4) requires something more than a breach of a general fiduciary obligation imposed by state law. "The broad general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context." *Ragsdale*, 780 F.2d at 796.

■ Further, Ninth Circuit case law establishes that the debt alleged to be nondischargeable "must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract." *Evans*, 161 B.R. at 477 citing *In re Johnson*, 691 F.2d 249, 251 (6th Cir.1982). The requisite trust relationship must exist "prior to and without reference to the act of wrongdoing." *Ragsdale*, 780 F.2d at 796 citing

---

"It is a settled rule ... that a default judgment by the court that exceeds the demand or gives relief where no demand is made therefor is void and in excess of the court's jurisdiction and not res judicata." (citations omitted)....

"In addition ... it is a well-established rule *that in a default case the relief granted cannot exceed the prayer.* [Citations omitted].... *And where relief is given beyond the scope of that asked for, it is a nullity, and may be attacked collateral-*

*ly, or its effect avoided* under the doctrine that it is not *res judicata. Burtnett*, 33 Cal.2d at 808–809, 205 P.2d 657 (Emphasis in original). *See also Greenup v. Rodman*, 42 Cal.3d 822, 231 Cal.Rptr. 220, 726 P.2d 1295 (1986).

17. In any event, it appears that sufficient evidence was proffered at the default prove-up hearing (through declarations and depositions) to support a finding of malice.

*Davis, supra* at 333, 55 S.Ct. at 153–54 and *Pedrazzini, supra* at 758. Thus, constructive, resulting and implied trusts are necessarily eliminated from consideration. *Woosley,* 117 B.R. at 529. The allegations of the Complaint were therefore insufficient on their face to support a finding of a fiduciary relationship of the type required under 11 U.S.C. § 523(a)(4).

The court notes that the Nondischargeability Complaint similarly fails to allege facts sufficient to support a finding of an express or statutory trust. Nevertheless, Defendant has not moved for summary adjudication on (nor has she made a motion to dismiss) the 11 U.S.C. § 523(a)(4) claims (Counts Two, Four, and Six) on that basis. Thus those claims must survive for now, although in large measure the partial summary judgment awarded to Plaintiffs herein may render any further inquiry under 11 U.S.C. § 523(a)(4) unnecessary. If Plaintiffs wish to pursue the breach of fiduciary theory further, they will have do so at trial, but only after they obtain leave to amend the Nondischargeability Complaint.[18]

### F. *Remaining Issues*

This Memorandum Decision settles several of Plaintiffs' claims against Defendant based upon the collateral estoppel issues discussed herein. There are, however, remaining or surviving claims that Plaintiffs may choose to prosecute against Defendant. As to certain of those claims, Plaintiffs are not entitled to relief at this point and Defendant is entitled to partial summary judgment on one count.

Where a given issue or defense is not raised in the prior proceeding, a default judgment does not operate as a conclusive adjudication so as to collaterally estop the defendant from raising the issue or defense in a subsequent proceeding. *English v. English, supra; Mitchell v. Jones,* 172 Cal. App.2d 580, 342 P.2d 503 (1959).[19]

---

18. Based upon the record presented, the court doubts that Plaintiffs could plead and prove a case under 11 U.S.C. § 523(a)(4).

19. Plaintiffs argue in their brief, without citation to any authority, that defendant has *waived* all substantive defenses (such as privilege) by virtue of her failure to raise them in the State Court. Plaintiff also cites *Mitchell* for the proposition that the Defendant "is collaterally estopped from

In *English,* plaintiff husband brought suit to rescind a separation agreement calling for monthly payments of $200 to the wife, on grounds that the agreement was procured by means of fraud, coercion and duress. Defendant wife argued that a prior default judgment, which directed the husband to pay certain overdue installments under the agreement, necessarily determined the validity of the agreement and therefore estopped the husband from later asserting the invalidity of the agreement. The court held that the default judgment did not operate as collateral estoppel regarding the validity of the agreement:

> [W]e conclude that the default judgment ... wherein the issue of fraud, coercion and duress in procuring the execution of the agreement were neither pleaded nor determined, is not *res judicata* in this proceeding and does not estop plaintiff from maintaining this suit to cancel the contract as to all installments which accrued subsequently thereto.

*Id.* at 365, 70 P.2d 625.

Similarly, in *Mitchell,* defendant Jones had obtained a prior default judgment for damages and injunctive relief on an action against Mitchell for negligently filling the lower portion of their land, causing mud to flow onto Jones' land. Mitchell brought a subsequent action against Jones for damages for deprivation of lateral support caused by Jones' excavation. The trial court held that the former judgment operated as an estoppel on the issue of defendant Jones' negligence and entered judgment in defendant's favor. In reversing the judgment, the appellate court stated:

> The default judgment ... did not determine that she (defendant) was not guilty of negligently excavating her property. This was not raised by her pleadings and a determination of this question clearly was not required to uphold the default judg-

denying all issues which were *or could have been covered or litigated* under the complaint and were necessary for the judgment". Opp. Mem. at 11:16–18. (Emphasis added). As discussed in *Mitchell,* however, the general principle that a defendant waives defenses not raised or asserted is inapplicable in the context of a default judgment. *Mitchell,* 172 Cal.App.2d at 584–86, 342 P.2d 503.

ment. *Assuming, arguendo, that the question of defendant's excavation would have constituted a defense to her action, the default judgment does not preclude subsequent litigation on this issue in California for this question was not raised by the pleadings, nor was its resolution necessary to uphold the judgment.*

*Mitchell,* 172 Cal.App.2d at 587, 342 P.2d 503. (Emphasis added.)

Here, the Motion identifies defenses to the surviving nondischargeability claims not disposed of by the court's decision on Plaintiffs' Counter–Motion.

■ Defendant argues that Plaintiffs' claims for slander, libel and extortion[20] are each based upon her complaint to the State Bar alleging mishandling of client trust funds by Brennan J. Newsom. As to the slander and libel causes of action, the issues were settled in the Default Judgment and will not be visited again. The Complaint contains no allegations or prayer for damages on account of Defendant's filing of the State Bar complaint. Rather, the statements alleged to have constituted slander were oral statements to third parties and the publication alleged to have constituted libel was a letter written by Defendant and sent to Plaintiffs' offices. Accordingly, the Default Judgment could not properly have awarded any damages based upon harm caused as a result of Defendant's filing the State Bar complaint. Thus, as these allegations were neither raised by the pleadings nor necessary to the court's decision, all defenses were preserved.

■ Plaintiffs' Count Six—based on an underlying claim of extortion—alleges that Defendant threatened to report Plaintiff Brennan J. Newsom's purported wrongful conduct to the State Bar unless Plaintiffs agreed to forgive their claim against Defendant for professional negligence in performing her accounting duties. Plaintiffs allege that those threats arose out of the wrongful taking by Defendant of Plaintiffs' files, constituting a malicious injury under § 523(a)(6). Plaintiffs further argue that the subject nondischargeability count is not based solely on extortion per se, but also upon wilful inflic-

tion of emotional distress (for which compensatory damages of only $101.20, with no punitive damages) was awarded in the Default Judgment.

As to the extortion theory, Defendant makes an appealing argument as to the insufficiency of Plaintiff's pleadings to make a case for extortion under California law. However, the thrust of this count is not extortion, despite its title. Instead, this count contains a confusing medley of offenses including conversion, breach of fiduciary duty, and malicious injury under 11 U.S.C. § 523(a)(6), seeking the entire amount of the Default Judgment to be nondischargeable. On balance, the claim appears most nearly to replicate the Complaint's Fifth Cause of Action, a claim for intentional infliction of emotional distress that resulted in award of $101.20. On the record presented, which the court has carefully reviewed, it is impossible to say that the state court's determination collaterally estops Defendant or that Plaintiffs cannot prove some elements of this count in this action. Accordingly, summary judgment would be inappropriate for either party.

■ Plaintiffs' claim for Malicious Injury to Another Under § 523(a)(4) (Wrongful Prosecution of Administrative Charges)[21] seeks a determination of nondischargeability under 11 U.S.C. § 523(a)(4). There Plaintiffs allege that Defendant breached her fiduciary duty to them by filing groundless charges against plaintiff Brennan J. Newsom with the State Bar, which charges were dismissed. Since no claim for wrongful prosecution was included in the Complaint or necessary to the court's decision, collateral estoppel does not apply.[22] Even if Plaintiffs dropped the fiduciary element of this count Defendant would be entitled to summary judgment.

■ California Civil Code § 47(2) provides an absolute privilege for publications or broadcasts made in any judicial proceeding. Accordingly, a complaint to the State Bar, a quasi-judicial body, is absolutely privileged.

■ Where, as here, the State Bar initiates an investigation following a com-

---

**20.** Plaintiffs' improperly numbered Count Six.

**21.** The second Count Four.

**22.** See, also, the discussion of 11 U.S.C. § 523(a)(4) in Part E, supra.

plaint against an attorney, no action for malicious prosecution will lie, even if the proceedings are terminated in favor of the attorney. *Stanwyck v. Horne,* 146 Cal.App.3d 450, 194 Cal.Rptr. 228 (1983); *See also Chronicle Publishing Co. v. Superior Court,* 54 Cal 2d 548, 7 Cal.Rptr. 109, 354 P.2d 637 (1960). When a publication is absolutely privileged, there is no liability even if it is made with actual malice. Such a privilege, where established, will defeat a tort action which, however labeled and whatever its theory of liability, is predicated upon publication of an injurious falsehood. *Block v. Sacramento Clinical Labs,* 131 Cal.App.3d 386, 390–91, 182 Cal. Rptr. 438 (1982).

■ Accordingly, summary judgment in Defendant's favor should be granted against Plaintiffs on the grounds that Plaintiffs are barred, as a matter of law, from bringing an action against Defendant for wrongful prosecution of administrative proceedings, based upon Defendant's filing of the State Bar Complaint.

## IV. DISPOSITION

Plaintiffs are entitled to partial summary judgment in their favor on Counts One and Three, such that the amount of $159,394.55 of the Default Judgment will be held to be nondischargeable in defendant's Chapter 7 case, together with interest applicable to that portion of the Default Judgment in accordance with California law. Defendant is entitled to partial summary judgment as to the second Count Four, based upon wrongful prosecution of administrative charges.

Plaintiffs are not entitled to summary judgment on Counts Two and Four based upon 11 U.S.C. § 523(a)(4). Because Defendant did not seek summary adjudication on those counts, the court is not in a position to dispose of them at this time. Plaintiffs are not entitled to summary judgment on their incorrectly numbered Count Six.

Plaintiffs are to submit a form of order granting and denying the Motion and Counter–Motion consistent with this Memorandum Decision, as well as a corresponding form of partial summary judgment. Those documents should filed and served in accordance with B.L.R. 9021–1 and B.L.R. 9022–1 no later than thirty days from the date of service of this Memorandum Decision.

Because the court is holding a trial date of November 13, 1995 (two days reserved for trial) in this adversary proceeding, counsel for Plaintiffs is to advise the court if Plaintiffs intend to go forward with the balance of their claims against Defendant. That advice should be given no later than the time the foregoing proposed order and proposed partial summary judgment are submitted. Unless Plaintiffs' counsel specifically confirms his clients' desire to go ahead with trial, the court will consider the balance of Plaintiffs' claims as abandoned and will redesignate the partial summary judgment awarded herein as a final summary judgment and will drop the matter from the trial calendar.